### CRICHTON et al. v. KROUSE et al.
#### No. 4323.

Court of Appeal of Louisiana. Second Circuit, Second Division.
June 11, 1932.

636

Watkins & Watkins, of Minden, for appellants.

Stewart & Stewart, A. S. Drew, and Jno. T. Campbell, all of Minden, for appellees.

## CULPEPPER, J.

Thomas Crichton, Jr., son of Thomas Crichton, Sr., deceased, brought this action individually and as agent and trustee for his widowed mother, Mrs. Kate Jackson Crichton, and his sister, Mrs. Kate Crichton Gredlar, and brother, Powell Crichton, the four constituting the widow and sole heirs of Thomas Crichton, Sr. They allege as such that they are the owners of the west half of northeast quarter and northwest quarter of southeast quarter of section 19, township 20 north, range 8 west, containing 120 acres, in Webster parish, La.

The defendants are: Mrs. Emma H. Davenport, Mrs. Eunice Miller, Mrs. Rosa Lee Alexander, C. P. (Phillip) Krouse, Maxey J. Krouse, Arthur R. Krouse, Emile S. Krouse, Frank O. Krouse, Mrs. Iona Botzong, Ruby Krouse, Bernard Krouse, Shirley Krouse, Curtis Krouse, Chester Krouse, D. W. Stewart, E. L. Stewart, E. E. Miller, Mrs. Juanita Clifton, Miss Osceola Hunt, Mortimer L. Hunt, Bernice Durdin, Vollie Wood, Irma Dudding, Annie Fay Meredith, Willie May Armstrong, Otto J. Miller, Oswell Miller, and Sybil Stroud, who claim to be the heirs and legal successors of Mrs. Eliza Leon, Mrs. Helen Geontgen, Bernard J. Geontgen, Dr. F. O. Krause, and his wife, Mrs. Rosaura Krouse.

Plaintiffs pray for service and citation upon defendants, " * * * requiring said defendants to appear and test title to said property under Act 38 of 1908 and after hearing had that your petitioners be decreed the owners of said property and for possession of same as owners, and that the alleged title and claims of the defendants and each of them be decreed illegal, null and of no effect and that same be ordered cancelled as a cloud upon your petitioners' title to the property. In the alternative and if the defendants on trial of the case show sufficient possession to sustain a petitory action, which is denied, as above alleged, then and in that event that your petitioners as plaintiffs, should be decreed the owners * * * in chain of title alleged. * * * "

Plaintiffs set up what defendants admit to be a complete chain of title to the property, emanating from the United States government through grant to the Vicksburg, Shreveport & Pacific Railroad Company, the grant becoming operative and effective after the completion of said road, the exact date of which is not shown in the record.

The tract of land here involved is within the area between Shreveport and Monroe of the lands granted by the government. The abstract of title filed by plaintiffs shows that the written evidence of the selection was recorded in Webster parish, January 5, 1888, which might be taken to indicate approximately the date on or about which the railroad was completed.

Defendants rely solely upon the possession of thirty years, and make that as their special plea in bar of plaintiffs' right of recovery. Paragraph 10 of the answer, which may be taken as setting forth under whom their alleged possession originated and the kind and character of possession relied on, is as follows:

"Further answering, defendants aver that they are the heirs and legal successors of Mrs. Eliza Leon, Mrs. Helen Geontgen, Bernard J. Geontgen, Dr. F. O. Krouse and Mrs. Rosaura Krouse. and as such are owners of all property and rights left by them and that each of said parties owned and had possession of the herein described tract of land, which possession was transmitted and delivered to defendants with all rights and privileges.

"That your defendants and authors had had continuous, exclusive, open, notorious, physical and visible possession of said entire tract of land for more than thirty years, and during said time have improved said property, clearing and fencing the entire tract and putting it in cultivation, built a store house, residence, tenant houses, barns and other structures on it at a great expense to themselves, during which time neither plaintiffs nor their authors ever asserted any ownership or possession of same."

In paragraph 6 they aver that " * * * their authors and ancestors have had actual, physical and exclusive possession * * * as owners believing that they were the true and lawful owners, for more than thirty years next preceding the filing of this suit."

In paragraph 3 they aver that said possession has continued since 1871, and that their ancestors had possession as owners at the time and long previous to the date of any of the deeds and records referred to in plaintiff's petition.

Under the pleadings as made up in the case it appears. as stated by the trial judge in his written opinion filed in the record, that defendants must stand or fall on their plea of thirty years' prescription, in the face of the complete recorded chain of title produced by the plaintiffs.

Upon trial of the case there was judgment rejecting plaintiffs' demands, and they have appealed.

None of the defendants have answered the appeal.

It will be noted here that C. P. Krouse, one of the defendants named in the petition, was not cited or served as a defendant, but he later filed, on his own behalf, a petition of intervention and third opposition as against both the plaintiffs and the defendants, claiming title in himself as owner by prescription of thirty years. His claims, however, were rejected by the court in its judgment, and he has not appealed; therefore, he has passed out of the case as a litigant. Suffice it to say that the interest which this party once owned in the property as son and legal heir of Dr. F. O. Krouse and his wife, Mrs. Rosaura Krouse, had been sold to E. E. Miller, one of the defendants, by the sheriff, under execution of a judgment obtained by a judgment creditor of said C. P. Krouse's, prior to the filing of this suit, which left him without any interest in the property.

From the testimony in the record it is clear that Dr. F. O. Krouse, whose wife was at the time Mrs. Rosaura Krouse, established his home on the south 40 acres of this 120-acre tract many years before the grant of the land to the railroad company became effective, and that he held and occupied it and the other two forties as a home and a farm, in connection with several hundred acres of other lands adjoining and surrounding the 120 acres, continuously thereafter until his death, which occurred in 1890. It is also shown that his said wife, Mrs. Rosaura Krouse, continued to occupy said home and farm, left her by her husband, until her death in 1918.

One of Dr. Krouse's sons, Octo Krouse, who it appears had been managing the farm and store on the property for his father, continued to do so for his mother until his death in 1895, at which time C. P. (Phillip) Krouse, above referred to, took the place of Octo and managed the place for his mother until her death, and he has since continued to reside on the place down to the present time, using it as a home, cultivating and having it cultivated by tenants, pretty much in the same manner and fashion he did while his mother was living.

Plaintiffs admit, as set out in their petition, that they or their ancestors in title have never taken actual or physical possession of the property, but allege, and it is shown by the evidence, that they have had it assessed to them and paid the taxes on it, have given a number of oil and gas leases on it, and granted rights of way over it for oil and gas pipe lines, which it is contended constitute acts of ownership. Plaintiffs also call attention to the fact that they made a sale of the timber to the Grayson Lumber Company, as an act of ownership. The record in suit No. 6721 on the docket of the Webster parish court, filed in evidence in this case, shows, however, that defendants in this suit, claim-

ing ownership of this land, successfully enjoined the cutting and removal of the timber under said sale by plaintiff. While the suit did not result in determining title, it did result in the court recognizing defendants herein as being in the possession of the property. The act of cutting the timber began in February, 1929, which was promptly stopped by injunction, on the ground of trespass.

Regarding the possession of defendants, the trial judge found from the evidence as follows (quoting from his written opinion):

"From the testimony of Mrs. Emma Davenport, Monroe Chandler, D. W. Stewart, Sr., and N. J. Sexton, the Court is convinced that Dr. F. O. Krouse took possession of this property some sixty years prior to the filing of this suit; that he built on the South forty a residence, a store and other improvements; that he built a tenant house on the north forty; and that he cleared, fenced and cultivated the major portion of the three forties.

"Since prescription could not commence to run until this land was severed from the public domain it becomes necessary to determine when the property passed into private ownership. From the documents filed in evidence it appears that this was not later than January, 1888. At that time, and for some years prior thereto, the property was apparently under fence and in cultivation or in use as a pasture, with the possible exception of a very small tract east of the public road and two or three acres along the edges where ravines made it impossible for fences to be placed. Furthermore, the property here involved was at that time, and had been for some years, almost entirely surrounded by other lands belonging to Dr. Krouse, the entire tract of several hundred acres being known as the Dr. Krouse place.

"Dr. Krouse continued to live on this property until his death in 1890. His widow, Mrs. Rosaura Krouse, lived thereon until her death in 1918, and her son, C. P. Krouse, continued to live there up to the date of the trial of this case.

"This possession of these parties was held in the character of owner and was continuous, public, unequivocal and without any interruption, at least up to the year 1919, when plaintiffs executed the first several rights-of-way deeds for the construction of oil and gas pipe lines across the property. This possession by defendants continued up to the time this suit was filed without any further interruption other than the cutting of timber shortly before the filing of this suit by T. S. Grayson Lumber Company, Incorporated, purporting to act under a timber deed executed by plaintiffs.

"Several years ago the passage of a stock law made fences around cultivated land unnecessary, but evidence of the former existence of the fences around this property was

noted by several of the witnesses shortly before the trial of this case."

Such were the findings of the facts by the trial judge as touching the question of extent, character, and kind of possession relied on by defendants. We have made a careful study of the testimony in the record, and think the trial judge's findings in the main correct.

Plaintiffs' learned counsel complains that the trial judge erred in not dissecting and analyzing the issues, and the evidence which would clearly. show a want of actual continuous possession of thirty years required by the Civil Code and the decisions of the Supreme Court.

Counsel contends that the case of Davis v. Young, 36 La. Ann. 374, is applicable to this case, wherein that case holds the proposition that where one who is in possession offers to buy from one holding an adverse title will defeat the plea of prescription, citing Civ. Code, arts. 3490, 3500. This would not seem to apply to this case, for the reason that none of the defendants here ever offered to buy from plaintiff, or from C. P. Krouse or any one else.

There was no question raised in the above-cited case as to abandonment or interruption of possession. Counsel in this connection cites the case of City of New Orleans v. Shakspeare, 39 La. Ann. 1033, 3 So. 346. This case holds the well-recognized principle as provided under Civ. Code, art. 3500, that possession "under the title of owner" is one of the essential conditions in the prescription of thirty years by which the ownership of immovables can be acquired "without any need of title or possession in good faith."

It further holds that, if it appears that the party who pleads the prescription of thirty years acknowledged at any time before his possession covers a space of thirty years, the title of ownership was in his opponent, his plea is defeated, and his alleged ownership is destroyed.

It further holds that he who would sustain his plea of the thirty years must show, by satisfactory evidence, a continuous and uninterrupted public and unequivocal possession, under the title as owner, citing Civ. Code, arts. 3500, 3426. And that the burden of proof is on him who pleads this prescription to prove it, and "he must show, by evidence satisfactory to the court, the beginning of the possession adverse to that of the true owner, that the court may determine if the full term of thirty years has elapsed."

The trial court in the present case concluded that defendants have met all of the conditions imposed by these articles of the Code, and the decision in the above-cited case.

▮ One of the heirs, C. P. Krouse, took the witness stand in his own behalf and tes-tified at length to the effect that he himself took possession of the property in 1895, cleared a lot of lands, built fences, cultivated the fields, etc., all, however, for himself alone, independently of any of the other heirs; that he continued to possess, use, and occupy the property unmolested by anyone else up to the present time, holding it as his own, publicly, openly to the world, which would be more than thirty years. But no other of the Krouse heirs offered any testimony whatever to corroborate C. P. Krouse in his declaration that he held the possession for himself; on the contrary, all of the testimony of the other heirs and other defendants herein, as well as the documentary evidence filed in the record, indicate that when C. P. Krouse took charge of the property in 1895, it was for his mother, Mrs. Rosaura Krouse, and that he continued to manage the property for her thereafter; that she was the undisputed owner of it and was so recognized by the public generally. She leased him the property in 1911 for a period of twenty-five years, thus indicating plainly that he looked upon her as the owner. He tried to buy it from his mother by a fraudulent deed, but the heirs after her death, and after discovering the fraud he had attempted to perpetrate upon his mother, filed suit against him and had the deed annulled. He then turned around and filed suit against the other heirs in an effort to enforce a specific performance clause which he had put in the lease contract granting him an option to buy the property, which act of his was further admission that he did not claim to own it. The court rejected his demand for the specific performance. The result of all of this litigation showed that he never owned it outright, but only had a lease upon the land, and he in effect admitted as much at last by continuing to reside upon the property and cultivate it. It is true he paid no rents, but, as stated by Attorney Stewart on the witness stand (Mr. Stewart was agent for the heirs for many years), it appeared useless to try to collect rents from him when he had nothing to pay with. He was, it appears, merely allowed to stay on the place after his mother's death by sufferance from the other heirs, and not with any intention on their part to abandon the property to him or to any one, but that they looked upon him as one of the heirs to the property, and possession by him was possession for and on behalf of all the other heirs. These were the conclusions reached by the trial court from all the circumstances attending the possession by C. P. Krouse as disclosed by the evidence. We think the testimony as a whole amply justifies such conclusions, and we are in full accord with the judge in this matter. We think it clear that the possession by C. P. Krouse was for his mother, Mrs. Rosaura Krouse, and the other heirs from 1895, the

time he took charge of the management of the place, upon the death of his brother, Octo Krouse, up until his mother's death in 1918; and that his possession and occupancy thereafter, and continuously up to the time of the filing of this suit, was that of and for all of the heirs and co-owners of the property. It is true his undivided interest as heir was sold out from under him to E. E. Miller, one of the defendants and co-owners, by the sheriff in 1925 as above stated, but we do not think that fact changed the character of his possession as to these defendants under the circumstances and in view of the fact that he had a lease contract upon the property, and for all intents and purposes his possession might be deemed as a tenant as well as it might be that of co-owner. It is nowhere shown that his lease contract was ever terminated. We think, as was stated in the case of Crayton v. Waters, 146 La. 242, 83 So. 540, 541, cited and relied on by plaintiff, that: "The record fairly shows that he [Crayton] never intended to possess it to the exclusion of his coheirs, but frequently acknowledged their interests. * * *" C. P. Krouse made a judicial acknowledgment of this fact when he joined with or allowed his name to be used as coplaintiff with the other heirs in suit (No. 6721) enjoining the cutting of timber from the land. This was pleaded as an estoppel against C. P. Krouse's claim of independent ownership, and we think the plea was good, and that he was in fact completely estopped from making such a claim.

Counsel contends that the records of Webster parish show wherein Mrs. Rosaura Krouse made a judicial admission in 1913 in connection with her petition for recognition and possession as heir of her deceased uncle, Bernard J. Geontgen, that up to that time she did not claim to own the south forty of this land, but that title to same rested in her said uncle. Counsel refers us to page 81 of the abstract of plaintiffs' titles filed in evidence. We there find that Mrs. Krouse, in describing the property purporting to belong to her uncle's succession, gives it thus: S. E. ¼ of N. E. ¼ and all of S. E. ¼ of Sec. 19, Tp. 20 N., R. 8 W., except 10 acres in the northwest corner of N. W. ¼ of S. W. ¼ of Sec. 19. It can readily be seen that there is an error in this description. The description "S. E. ¼ of Sec. 19" should either read N. W. ¼ instead of S. E. ¼, or the 10 acres excepted should read to be in the S. E. ¼ instead of N. W. ¼ of S. W. ¼ of the section. Besides, the abstract, which purports to show all recorded documents affecting the N. W. ¼ of S. E. ¼ of Sec. 19 (the south forty involved here) does not show that Bernard J. Geontgen claimed to own this forty at his death. It is evident that there was an error shown in the proceedings had in this connection, and same should, we think, be disregard-

ed in so far as going to show judicial admissions on her part.

Counsel further urges the proposition that Mrs. Krouse could not claim possession through her husband (whose death occurred in 1890) because she could inherit from him no rights whatever, as he had direct heirs, and that there has been no claim made by defendants to any inheritance from their father and no mention made of his name when they petitioned to be put in possession of their mother's estate in 1919. Counsel is in error in saying defendants made no claim by inheritance from their father. In paragraph 10 of the answer they specially aver "that they are the heirs and legal successors of * * * Dr. F. O. Krouse and Mrs. Rosaura Krouse, and as such are owners of all property and rights left by them. * * *" This is clearly a claim of heirship and of the rights flowing therefrom, both as to their father and mother. Granting that Mrs. Krouse could not inherit from Dr. Krouse, her husband, his children could, and we see no reason, and have been cited to no authorities to the contrary, why these defendants cannot claim under their paternal ancestor as far as his possession extended, and thereafter under their maternal ancestor, particularly as to the common home which existed between the father and mother. Whatever rights either or both held descended to their children.

Counsel points out further that all of the children of Dr. Krouse and his wife had married and left their parents' home long years ago, and, as to such children and their descendants, no continuity of possession after the death of Mrs. Rosaura Krouse could be maintained of the property. Our answer to this is, as heretofore stated, that their possession was preserved and maintained through C. P. Krouse, both as tenant and coheir.

Counsel further contends that the evidence, when properly analyzed, does not show continuous possession of thirty years as required by the Civil Code, citing articles 3500 to 3503, inclusive, also citing a number of decisions both by the Supreme Court and Courts of Appeal. Article 3500 provides: "The possession on which this prescription [30 years] is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."

Article 3501 provides: "The possession * * * when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor's intention to preserve the possession * * * as the keeping up of roads and

levees, the payment of taxes, and other similar acts."

Article 3502 provides: "A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him; as, for example, the ruins of a house."

And, finally, article 3503 provides: "How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, * * * it extends only to that which has been actually possessed by the person pleading it."

Under article 3503, we find cited the case of Frost Lbr. Industries v. Bluford, decided by this court and reported in 13 La. App. 686, 128 So. 711, 713, and cited and relied on by plaintiffs. In that case Bluford, who plead thirty years' prescription as to a 40 acres of land, had under fence and in cultivation at the time only 28½ acres. He contended for the remaining 11½ acres on the ground that forty or fifty years ago, when a small boy, he cultivated that part. Judge Drew, as organ of the court, said that Bluford's testimony on that score was very uncertain; that the preponderance of the testimony was that the 11½ acres had not been cultivated in fifty years, and that it had grown up in pine timber that was fifty years old; "that there was no vestige of a fence around this part of the 40, and the witnesses who had lived in the neighborhood for forty-five and fifty years testified that they never saw a fence around this part of the 40, nor do they remember it ever having been worked. Defendant does not claim that he has exercised any act of possession since he claims to have worked it forty or fifty years ago. He did not claim to use it for pasture or to take firewood from, or any act of possession of any kind." The court then concludes by quoting from article 3503 of the Civil Code thus: "How favorable soever prescription may be, it shall be restricted within just limits." The court clearly meant that the article should be construed favorably to the pleader, but that, under circumstances such as were there shown, the expression, "within just limits," certainly could not be applied. Bluford had evidently long since abandoned that part of the forty, if indeed he had ever possessed it at all. The present case presents altogether a different state of facts. There were visible signs of the old fencing around the 120 acres, some of it being down, some still standing, some of the land still in cultivation, some in pasture, the fencing around some of it no longer necessary on account of the stock no-fence law. Cultivation had been discontinued many years ago, had grown up, then recleared and put back into cultivation; according to the testimony of C. P. Krouse, that portion from which the Grayson Company in 1929 cut timber was under fence and used as pasture at the time; the portion never fenced in front of the old

Dr. Krouse dwelling and store had always been used as the front of the premises, as a so-called "stamp" and entrance way with large trees probably used for shade; and practically the same can be said of the small strip east of the premises along the old roadway, and the same also can be said, as mentioned by some of the witnesses regarding the small patch of woods near or surrounding the old Robert Wood tenant house on the north forty; and the reason for the very small estimated acre and a half projecting from the east side of the middle forty in a wedge shape into the forty was because of ravines which made it impractical to build a fence. We have no hesitance in concluding from all the circumstances surrounding this case that to hold defendants' proof of the possession insufficient to comply with the terms of the Codal provisions would be violative of the phrase, "shall be restricted within just limits," expressed in the article 3503.

In discussing this species of prescription, Judge Drew quoted approvingly from Loeb v. Fetzer, 155 La. 659, 99 So. 520, as follows: "To maintain the plea of prescription of 30 years acquirendi causa, there must be corporeal possession in the beginning, which must be continued, or else the possession must be preserved during the entire period by external and public signs announcing such possession, and the intention to possess."

The facts disclosed in the present case, we think, show these requirements. We have examined the other authorities cited by counsel for plaintiff, and can find nothing contrary to these principles of the law, either in letter or spirit.

In the case of Prevost's Heirs v. Johnson, 9 Mart. (O. S.) 123, cited by counsel to the point that where a usurper enters on land, he acquires possession "inch by inch" of the part which he occupies, there was no such state of facts there shown to warrant drawing such a fine distinction. The party claiming the possession was shown never even to have fenced in any of the tract of land claimed by him. All he had done was to clear or have cleared a small portion and cultivate it in small patches uninclosed. There is nothing we can see in that case to have given the court occasion to use the expression referred to.

While we dislike to have to extend these discussions to such lengths, the very ingenious counsel for plaintiffs has raised and urged so many points that it appears impossible to do otherwise.

It is contended that in the possession by defendants, from the time Dr. Krouse settled up the property on down to the present time, the intention to possess as owner was and is wholly lacking as evidenced by the facts that in the first place Dr. Krouse knew at the time he settled the place that it was called railroad land and not subject to en-

try; that when he made a deed of his property to his wife in 1873 of other lands adjoining this he did not include this land, which fact counsel contends is evidence that he did not claim to own it; that when Mrs. Krouse executed a lease and option to her son, C. P. Krouse, to buy in 1911, and in 1914 executed a deed to him, no mention was made of this 120 acres. The fact remains, nevertheless, that the testimony of all of the witnesses, except perhaps C. P. Krouse, bearing upon the character and intention to possess as owner, is to the effect that Dr. Krouse did possess, occupy, and use the property as owner. It is a familiar principle of law that the intention of a person is rarely ever able to be shown except by his actions, and that it is his acts and conduct that courts and juries rely upon to determine intent. Certainly Dr. Krouse's intention to possess as owner can easily be inferred from his actions in establishing a home for himself and family when we consider the magnitude of the improvements he put on the forty and the character and duration of its use made by him. It is not shown that he ever at any time admitted even verbally to any one that he did not claim to own the property. He could very well have intended to continue to own the property, even though he did not expressly deed it to his wife. He does not state in the deed that the property described therein was all that he owned at the time. The same can be said with reference to Mrs. Krouse during the time she possessed it after her husband's death and when she executed the lease and the deed to C. P. Krouse. Intention after all is a question of fact, as to the finding of which by the trial court we see no good reason to question.

As to the reference made by counsel to the testimony of C. P. Krouse on this point, the court evidently placed but little, if any, credit upon what he said, the reason no doubt being plain that this party set out on his own accord to build up a claim of title in himself to the whole of the property by tearing down the claims of these defendants. His contentions and representations in this case, as it had been shown to be in his claims to the property in the previous suits, were evidently considered by the court as unworthy of serious consideration. And in all of what counsel refers to as hostility between this heir and defendants herein, it is shown that defendants never at any time conceded that he ever owned any greater interest than his virile shares as an heir to the property, and that, as soon as they learned of the deed he had fraudulently secured from his mother, they took prompt action to have it set aside.

For the foregoing reasons we think the judgment of the lower court is correct, and it is therefore affirmed.