## DUNN v. BAYONNE.

### No. 6014.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Rehearing Granted April 4, 1940.

On Rehearing June 10, 1940.

R. E. Gahagan, of Natchitoches, for appellant.

J. D. Rusca, of Natchitoches, for appellee.

TALIAFERRO, Judge.

This is a boundary action. Plaintiff's deeds call for Lots one (1) to thirteen (13), both inclusive, of Sec. 62, Twp. 7 N, R. 5 W, containing 440 arpents, situated in Natchitoches Parish. He alleges that the defendant owns lands adjacent to his, on the south side thereof; that the common boundary line between said Sec. 62 and Sec. 70 is also the common line between the two estates; that said boundary line was established by the government many years ago, but that the physical markings thereof are now non-existent. He further avers that the defendant has recently encroached upon a portion of his land, across the south line of Sec. 62, and has erected a fence thereon; that he has endeavored to procure defendant's consent to effect the fixing of said boundary line extra-judicially, but without success. On prayer therefor, the court appointed a surveyor "to inspect the premises, * * * to survey the same and to report thereon in writing * * * as the law directs."

After due notices to the parties, the surveyor repaired to the premises on June 15, 1938, and duly located and re-established the line between the two sections. Written report of his action, with plat of the locus attached, was made to the court. Thereafter, defendant answered. She denies that the common line between Sec.

62 and Sec. 70 is the true dividing line between her land and that of plaintiff.

Further answering, defendant avers that she is the owner of approximately 26.50 acres of land in said Sec. 62, lying immediately north of the line between the sections; that her father, P. M. Rachal, purchased this tract from Apolinire Durisso in 1902 as per deed of record in book 108, page 333, of the Conveyance Records of Natchitoches Parish; that her said father went into physical possession of the 26.50 acre tract, fenced same and thus held it from that time until he died in the year 1933; that her father's sole heirs, defendant and Peter Rachal, inherited all of his property, including said 26.50 acre tract; that this small tract, with other land, was allotted to her in the act of partition between them. She prays that plaintiff's demands be rejected. Thereafter, defendant filed pleas of ten (10) and thirty (30) years' prescription, based upon said deed from Durisso and possession following.

The court overruled these pleas, homologated the survey and decreed the boundary line between the two estates to be the common line between Sec. 62 and Sec. 70. Defendant was given the right to remove her fence to this line. Each side was cast for one-half of the court costs. Defendant appealed.

Appellant does not now contend that the line run and established by the surveyor is not the true governmental line between the two sections; but she insists that she owns a strip of land containing 26.50 acres, of near rectangular shape, along the south side of Sec. 62, fronting on Little River, and that the survey should have established the common line between this tract and plaintiff's adjacent land in that section.

During the trial below, questions of title and possession of the respective sides were gone into at length. Each side introduced deeds relied upon, dating back for more than one-half a century.

Sections 62 and 70 front on Little River, at times referred to as Athao River. Both are of irregular shape. In the year 1877 all that part of Sec. 62 embraced in Lots 1 to 13, inclusive, was sold at sheriff's sale and to comply with the law then in force, the tract was subdivided into said lots and a plat thereof made and filed. The original of this plat is a part of the present record. Lots 5 and 7 and the north end of Lot 10 adjoin the north line of Sec. 70.

In August, 1885, D. R. Carroll held title to all of these lots, which are referred to as aggregating 440 arpents. Carroll's heirs transferred the tract to the Carroll Real Estate Company in the year 1896. This company transferred the tract to Dedierc LaCour in December, 1902, whose heirs, by the sheriff, sold same to J. H. Wardlow in October, 1936. The property passed through two or three more persons and was finally acquired by defendant under deeds executed in the years 1936, 1937 and 1938.

It is quite clear that plaintiff's titles embrace all of said Lots 5, 7 and 10 of the subdivision of Sec. 62, above referred to, and may be traced back unbroken for more than fifty (50) years. He and his predecessors in title have enjoyed the possession, actual and/or constructive of the entire tract for that period.

On June 6, 1902, Apolinire Durisso conveyed to P. M. Rachal two tracts of land fronting on said Little River; one containing 78 acres and the other containing 26.50 acres. We are not here concerned with the larger tract. The smaller tract is described in the deed as follows:

Bounded above (south) by lands of M. Barron; below (north) by estate of D. R. Carroll; in the rear by lands of D. R. Carroll estate and in the front by Little River.

At the date of this deed, the Carroll Real Estate Company, evidently a holding company for the heirs of D. R. Carroll, was the owner of that part of Sec. 62, north of the common line between that section and Sec. 70; hence, the reference that the 26.50 acre tract was bounded below (north) by lands of the estate of D. R. Carroll.

A deed from Aaron H. Pierson to Apolinire Durisso, executed October 24, 1859, filed in evidence, conveys a tract of land of two arpents front by a depth of forty arpents. In part, the tract is described by bounds. It is not said that the land fronts on Little River. We assume that it is defendant's theory that the 26.50 acre tract, in whole or part, is embraced within the tract described in this deed. However, identification from the written description is not possible. No parol testimony was introduced to establish identification.

It appears that in 1914, Mr. Hyams, surveyor in the present case, was engaged to run and establish some lines in this same vicinity, including that we are now considering. P. M. Rachal, who resided near by, assisted in the survey and pointed out some of the corners. That survey dis-

closed that Rachal had enclosed and in cultivation approximately eight (8) acres of Sec. 62 fronting on the river. The surveyor found, when making the last survey, the same quantity of land enclosed. It was then being claimed by defendant. But the plat accompanying the proces verbal of the survey does not delineate this possessed land.

The testimony is undisputed that P. M. Rachal, very soon after the deed to him from Apolinire Durisso in 1902, went into possession of a few acres on the river front, between the south line of Sec. 62 and the public highway running easterly from the river and approximately parallel to said section line. He fenced the area and cleared it of timber, etc. From year to year he enlarged the enclosure until it embraced possibly ten (10) or twelve (12) acres. Overflows from the river would destroy the fences, but after recession these would be rebuilt by Rachal or his tenants. He never lived on the tract, but leased it to others.

Perhaps a dozen witnesses who knew the premises well, most of whom were reared in the vicinity, testified that they knew Rachal claimed the land enclosed by him as owner. They heard him say so on many occasions. His tenants paid rent to him.

P. M. Rachal died in 1933. His possession was continued by his heirs. That part of the tract open and enclosed at time of his death had been in his actual possession for thirty (30) years and more. It is important to note here that for this same period and three years thereafter, Dediere LaCour and/or his heirs was in possession of all of the 440 arpent tract in Sec. 62, except that part physically possessed by Rachal. LaCour cleared land north of and to the road (opposite Rachal's fence) and at no time objected to Rachal's possession, nor did he or any of his heirs demand rent of him, so far as this record reveals. This status of the respective possessions prevailed when Mr. Hyams re-established this section line in 1914, yet no protest was thereafter made by the LaCours to Rachal anent his possession and occupancy of the land.

One old gentleman, aged 73, who had lived near these lands for 52 years, recalled distinctly when Rachal took possession of the land fronting on the river between the section line and the road. It was in 1902 or 1903. He is positive Rachal possessed as owner. He frequently passed by the place and often talked with Rachal about it. The following is a part of his testimony:

"Mr. Delouche, before P. M. Rachal claimed to own this little tract of land that's in controversy which went down to this lane, wasn't it considered to be owned by Madame Durisso?

"Madame Durisso, yes, sir."

We do not think the plea of prescription of ten years tenable. The description of the 26.50 acre tract in the Durisso deed to Rachal, on the face of the deed, cannot be reasonably identified with the area in Section 62, possessed by Rachal. No parol testimony was introduced to amplify or explain said description. It is likely true that Rachal thought the road to be the true boundary between this tract and the Carroll (LaCour) property. A strong inference arises that the Carrolls and LaCours held the same opinion. But it is certain that Durisso intended to sell and Rachal intended to buy only to the Carroll line. The Carroll land is definitely referred to as being the north boundary of the 26.50 acre tract.

Under the law applicable to the ten years' prescription acquirindi causa, one may not prescribe for property not included in his title. Civil Code, art. 3498. When the description is by bounds, possession exercised by the grantor beyond such limits is, legally speaking, not founded upon the deed, though good faith be present. Such a possession is regarded as action independent of the deed and in the eyes of the law, rights flowing therefrom are measured and controlled by the rules of law governing the prescription of thirty (30) years' acquirindi causa. Civ.Code, art. 3499, et seq.

Plaintiff endeavored to disprove defendant's contention that her father possessed this land as owner by testimony tending to establish that he leased it and paid rent thereon to others; and, therefore, ~ould not prescribe against the title of those for whom he held. Civil Code, Arts. 3436 and 3441. We do not think this effort successful.

Mr. Hyams testified that Rachal told him in 1914 he was renting this land from one Captain Caspari. Who Captain Caspari was, the record does not disclose. His interest, if any, in the land at that time

or at any other time, is not revealed. It is a well known rule of evidence that proof of admissions against interest of one dead is the weakest sort of evidence. Jones on Evidence, 4th Ed., § 295, page 554; Franchebois v. New York Life Ins. Co. 171 La. 358, 131 So. 46.

It does not go very far to overcome positive testimony, strong circumstances, nor weighty presumption to the contrary.

One witness says he knows that Rachal paid rent to Caspari for two years, but in the same breath he also says that he knows that Rachal claimed the land as owner. He could not recall the years in which the rent was paid, nor make a guess about it. He could not give his own age and in other respects his memory appears to have been very deficient as a witness. We are not seriously impressed by his testimony.

Another witness, who leased the land from Rachal for the years 1913–1923, testified that Caspari wanted the rent for the first year paid to him; that he reported the matter to Rachal, who replied that he "would fix it with him." This witness further testified:

"Q. You lived there all your life? A. Yes, sir.

"Q. Didn't you always consider that as his land? A. I knowed he had bought the little tract of land by some one. I can't tell you who.

"Q. You knew he had bought it? A. Yes, sir.

"Q. And you knew he claimed it as his own? A. Yes, sir, I knew that."

There is not a scintilla of testimony suggesting that Rachal's possession, in the beginning, was not as owner. This being true, a strong presumption arises that such possession was as owner and master and continued as such. Strong testimony, all things considered, would be necessary to overcome this presumption.

"As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another." Art. 3488 of the Civil Code.

The testimony, as a whole, convinces us that Rachal's possession and occupancy of the land in controversy was as owner and that his possession of as much as ten acres was continuous and uninterrupted for thirty (30) years. Such possession has been continued by his heirs. This acreage fronts on the river; it is bounded on the south by the section line and on the north by the old road. Only the east line remains uncertain. This should not be difficult of establishment.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed. The plea of prescription of thirty (30) years is sustained to the extent of ten (10) acres of land in the possession of defendant, bounded on the north by the old road referred to in the testimony in the case; on the south by the governmental line between Secs. 62 and 70, re-established by the survey herein; on the west by Little River, and on the east by a line to be established by survey or agreement of the parties hereto; and, for the purpose of establishing the east line of said ten (10) acres, this case is remanded to the lower court for further proceedings and orders. The costs of appeal are hereby assessed against the appellee. All other costs shall be paid by the parties equally.

On Rehearing.

DREW, Judge.

Plaintiff only complained of our former decree herein. On his application therefor, the rehearing was granted. He accepts, as correct, our factual findings pertinent to the plea of prescription of thirty (30) years, but dissents from that part of the decree which maintains the plea to the extent of ten (10) acres. He insists that not more than three (3) or four (4) acres have been physically possessed by defendant and his predecessors in possession for the required length of time. The testimony touching this question variously fixes the acreage thus possessed. In fixing the area at ten (10) acres, we, in a measure, endeavored to arrive at an average of the estimates on the subject. It is not improbable that this method of determining the acreage possessed for thirty (30) years under the facts of the case, is not a safe one. Therefore, we have decided to amend our decree on this score so that the quantity of land comprehended by said plea might be determined by the lower court after further hearing.

For the reasons herein given, this case is remanded to the lower court to the end and for the purpose of hearing testimony concerning the extent of the possession of the land in controversy by defendant and

his predecessors in possession for. a period of thirty (30) years, and of rendering judgment thereon. In all other respects and except as hereby amended, our former decree is reinstated and made final.