395 So.2d 366 (1981)
Standord J. LEVY, Jr.,[1] Miriam Levy Lichentag, Marie Louise Levy Steuer, Sidney G. Roos, and Leo S. Roos
v.
GERMANIA PLANTATION, INC. and Victor Schexnayder.
No. 13959.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
*367 R. Ryland Percy, Percy & Percy, Gonzales, for plaintiff-appellee.
Miriam T. Attaya, Attaya & Bell, Gonzales, for defendant-appellant.
Sidney A. Marchand III, Talbot, Sotile, Carmouche, etc., Donaldsonville, for defendant-appellee.
Before LOTTINGER, EDWARDS and PONDER, JJ.
EDWARDS, Judge.
Victor Schexnayder appeals a trial court judgment denying his claim of acquisitive prescription of certain Ascension Parish property. We affirm.
We adopt as our own the excellent opinion of Judge Becnel.

REASONS FOR JUDGMENT
"This matter comes before this Court based on a possessory action filed on behalf of STANFORD J. LEVY, JR., MIRIAM LEVY LICHENTAG, MARIE LOUISE LEVY STEUER, SIDNEY G. ROOS, AND LEO S. ROOS. The plaintiffs alleged that their peaceful possession of a tract of land containing thirty (30) acres located in Ascension Parish, Louisiana, in Sections 69, 72, and 77 of Township 10 South, Range 2 East had been disturbed by the recordation of mineral leases covering the property which had been granted by each of the defendants, VICTOR SCHEXNAYDER and Germania Plantation, Inc. Defendants answered each claiming ownership and possession of the tract in question. Both defendants claimed ownership based on the principle of thirty (30) years acquisitive prescription contained in articles 3499 et seq. of the Louisiana Civil Code.
This Court is satisfied that the plaintiffs have, through various documents, established record title to the properties involved in these proceedings. Neither defendant attempted to contravene the claim of the plaintiffs that they and their predecessors in title had record title to the property; the record title in plaintiffs is therefore judicially admitted. Unless the defendants possessed the property to the extent required by law to establish ownership by adverse possession, this court is bound to grant plaintiffs the relief prayed for.
During the course of the trial, defendant, Germania, Inc., attempted to prove physical possession of the property vicariously through co-defendant Victor Schexnayder. Germania, Inc. contended that their possession was through Victor Schexnayder, a lessee of Germania Plantation, Inc. Throughout the trial Germania, through its representative, Douglas Hayward, supported the contention of defendant, Victor Schexnayder, that he, Victor Schexnayder, physically possessed the property in question along with other lands adjacent to and adjoining the subject lands, which adjacent lands formed part of a larger tract owned by Germania. Schexnayder readily admitted being a lessee of Germania, Inc. and being in physical possession of lands as lessee of Germania lying to the North and East of the lands made subject of this lawsuit. He contended however that as to the lands made subject of the lawsuit, he did not work, cultivate and possess those lands as lessee of Germania. The nature of that possession and its legal consequences is the ultimate question this court is called upon to decide.
The lands made subject of this lawsuit were described in plaintiff's petition as follows, to wit:
(1) All of Farm Lots 188 ad 189 of Farm Subdivision No. 37 as designated on a map or plat of survey made by Frank T. Payne, dated March, 1911, a copy of which is recorded in the Conveyance Records of Ascension Parish, Louisiana, said lots being situated in Sections 69 and 72, Township 10 South, Range 2 East, containing a total of 9.0 acres, more or less.
(2) A certain tract or parcel of land containing 23 acres and being a fractional portion of Lot 2 of Section 77, Township 10 South, Range 2 East, being situated in Ward No. 6 in the Parish of Ascension and being the identical property acquired by E. P. Brady from John C. Klos on the 7th day of June, 1922 and recorded in *368 C.O.B. 63, folio 421, in the official records of the Parish of Ascension, Louisiana.
The uncontradicted testimony of all of the parties as well as exhibits offered and made part of the evidence, indicates that the 23 acres of item number (2) above described lies immediately to the South and West of a large tract of land to which record title lies in Germania Plantation, Inc.
The record also supports the finding that the 9.0 acres in item (1) are adjacent to and to the southwest of this 23 acre tract, the exact location of which was either by design or otherwise, never established to the satisfaction of this Court with legal certainty by the respective parties. For reasons hereinafter shown, except for a certain portion of that tract, the establishment of the exact location of the entirety of the nine acres is irrelevant to the adjudication of this lawsuit.
It should be noted at the outset that plaintiffs did not show where they exercised any acts which would constitute physical possession of the lands to which they established proof of having record title. Mr. Stanford Levy, Jr., one of the plaintiffs and the only one called to testify admitted that neither he or any of his co-owners ever fenced the property; that it was not cultivated or used for cattle grazing by him or his co-owners; that none of the plaintiffs or their predecessors cut timber or exercised any physical acts of ownership over or on the subject property. In fact the only direct involvement Mr. Levy had with the property was to visit it on several occasions, beginning when he was a young boy when he accompanied his father, to 1973 when he visited the property when an oil well was being drilled on the 23 acre tract and shortly prior to trial when he went to visit the tract with his attorney preparatory to this lawsuit.
As part of its case, defendant Germania employed the services of Vincent Pizzolato, a registered land surveyor to make a physical survey of the property claimed by it, which plat of survey was introduced in evidence by Germania as `Germania 1'. Mr. Pizzolato testified that according to his physical examination of the property he was called upon to observe, he found the property to be bounded on the north by a body of water about 30 to 40 feet in width known as Bayou Conway, on the East by a canal which was referred to as the Marchand Canal, on the south by what appeared to be evidence of an old fence, and what this Court found as utter confusion as to the West side. Although Mr. Pizzolato testified that his survey was a physical survey, i. e., he was noting on his plat what he observed, he nonetheless plotted an imaginary or assumed section line running from one confirmed grate bar to the north of Bayou Conway and one confirmed grate bar to the south or what would be presumed to be the Southwest corner of the 23 acre tract. On his plat Mr. Pizzolato shows what purports to be old Bayou Conway to the west of the tract but slightly to the east of the assumed section line. He then shows what he indicates to be a ditch connecting Bayou Conway to what he shows as a canal, all lying somewhat west of his assumed section line.
In his testimony, Mr. Pizzolato testified that he saw the fences as indicated on his plat; that the fences were barbed wire fences attached mostly from tree to tree and except for along Bayou Conway, the fences generally surrounded the tract which the court assumes constituted part or all of the 23 acre tract. Under cross Pizzolato testified that the fences were in state of disrepair in certain areas with no evidence of recent maintenance. He did state however that there were cattle footprints on the premises.
Mr. Douglas Hayward was then called to testify on behalf of Germania. Mr. Hayward is 52 years of age and part owner as well as manager presently of Germania. Mr. Hayward testified that the property involved in the lawsuit was immediately to the rear and in the southwest corner of Germania Plantation; that it formed part of the wooded or rear lands of Germania which was for many years leased to defendant Victor Schexnayder. According to his testimony and exhibits Germania Plantation, *369 Inc. was and is to this date the record owner of lands to the north and to the east of the tracts involved. According to Hayward, the acreage under dispute was occupied by defendant Victor Schexnayder for a period in excess of 40 years but as a tenant of Germania. He did not attempt to dispute the fact that Schexnayder had the property under fence as alleged by Schexnayder. Hayward claimed that Germania sold timber from the 23 acre tract during 1963 to 1964 through his father. (This fact was disproved by the testimony of all the parties, including that of Mr. Willard J. Cointment, a registered land surveyor employed by plaintiffs who visited the tract prior to trial.) Hayward testified that defendant Victor Schexnayder had acknowledged to him that the 23 acres he was using in his cattle operation along with the other lands of Germania to the North of Bayou Conway and to the East of Marchand Canal also belonged to Germania; that he had even been brought to the property by Schexnayder during 1969 in connection with an oil well which was being drilled slightly to the West of the tract as possibly being on Germania lands.
This court is unable to accept the allegations of Germania that Schexnayder was occupying and using the 23 acre tract as tenant of Germania. The court accepts Mr. Hayward's testimony insofar as it supports the fact that Schexnayder was occupying the 23 acre tract and that section of additional property to the west of the assumed section line shown by Pizzolato on the Germania plat to the canal and ditch, all as part of his larger cattle operation which included lands to the north and east to which Germania had record title. Mr. Hayward also testified as had Pizzolato, as to seeing an area of approximately ten acres along the north side adjacent to Bayou Conway which had evidently been cleared and cultivated for many years. The only direct involvement of the land in dispute by Germania was the oil lease granted by it some three years ago when conflicting claims were made to the property. The court concludes that the Germania claim of possession through Schexnayder as its tenants is not supported by the facts.
The court will now consider the claim of Victor Schexnayder. This court has no doubt whatsoever that Victor Schexnayder occupied the entirety of all of the lands included with the perimeters of Bayou Conway to the north, the Marchand Canal to the East, the fence line to the south as shown on exhibit `Germania 1' and old Bayou Conway, the ditch leading to the old steam water pump, and the canal along the west line. The evidence is clear that certain portions of that area measuring about ten acres were cleared some forty to fifty years ago; that the remainder was under fence individually or with a greater fenced in area with included lands admitted by Schexnayder to have been leased by him from Germania. Mr. Schexnayder testified emphatically however that this particular property did not belong to Germania. He stated that this acreage was never logged when the Germania property he had under lease was logged. He denied ever telling Mr. Hayward that the land described above belonged to Germania. Schexnayder's testimony was emphatic that when he first went on the 23 acres and started using it he never knew who the record owners were; that from around 1917 to date no one ever claimed or exercised acts of ownership of the tract. He testified that he exercised complete occupancy of the tract by farming part of it and keeping the remainder under fence; that he had a bridge over Bayou Conway to the North and one over Marchand Canal to the east so that his cattle would be moved from this tract to the property he leased from Germania to the North and to the East. Schexnayder further testified that he paid no rentals to anyone for the use of this property, the he never had occasion to assert ownership of the tract and that the only time the question of ownership arose was when he was approached by a representative of the oil company in connection with the oil lease he granted in 1977 which precipitated the present lawsuit. Schexnayder testified that when he was approached by a representative of the oil company, he, the oil company *370 representative, opened his eyes to the fact that his occupancy of the tract gave him a claim to it. The plaintiffs introduced evidence to show that although Schexnayder had executed oil leases in previous years on property to which he held record title in the immediate vicinity (some 10 acres distance away) that no oil lease had been granted by him on this acreage notwithstanding the fact that several wells had been drilled in close proximity to the tract. The plaintiffs also showed that the property had been forfeited for non-payment of taxes by the record owners after due advertisement in the official journal of Ascension Parish; had been redeemed by the record owners, all to establish that Schexnayder never concerned himself, prior to being approached by the oil company representative, about ownership. The Court concludes from the evidence that although Schexnayder occupied the lands continuously and without interruption from 1917 to date he, according to his own testimony, was never required to consider the question of ownership until approached in 1977 for an oil lease.
Mrs. Victor Schexnayder, when called as a witness, basically substantiated her husband's occupancy of the land. Mr. W. I. Duplessis, a neighbor and resident of the Darrow area where the subject lands are located testified generally as to Schexnayder's occupancy of the subject lands although he was unable to testify with certainty as to which lands occupied by Schexnayder in his cattle operations was owned or leased by him. Mr. Kerney Sheets, another witness called by Schexnayder, testified that he married Schexnayder's daughter in 1948; that from that date to this date he had been intimately involved with the property made subject of this lawsuit. His testimony was direct, clear and concise. Mr. Sheets corroborated Mr. Schexnayder's testimony as to the occupancy of the land involved herein. It was Mr. Sheets testimony that his father-in-law's every behavior was that as owner of the tract; that he considered it his father-in-law's property; that he never knew of anyone else claiming to be the owner of the tract.
The Court must now decide if these findings of fact are sufficient to vest ownership to the property, within the limits of the physical boundaries heretofore referred to, in Victor Schexnayder. As to any portion of the property included in the legal description in plaintiff's petition not included within the physical boundaries referred to herein, this court concludes that defendant Schexnayder has not established occupancy hereto. (This court has no way of knowing how much of the property is included or excluded without a formal survey.)
Our law in Louisiana permits one to acquire ownership of real property by virtue of thirty (30) years acquisitive prescription.
Civil Code Article 3499 provides as follows:
The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.
Article 3500 provides as follows:
The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.
Article 3488 provides this:
As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another.
Of equal importance is another article which provides:
Art. 3436. Essentials of possession
Art. 3436. To be able to acquire possession of property, two distinct things are requisite:
1. The intention of possessing as owner.
2. The corporeal possession of the thing.
As heretofore indicated, the court is convinced that Mr. Schexnayder has exercised continuous and uninterrupted possession of that portion of the subject lands for a period well in excess of forty years. The problem that the court has is determining the nature of that possession.
*371 Defendant Schexnayder was very honest and forthright throughout his testimony. He readily admitted that at the time his father before him took physical possession of the property they did not know who owned the land. They knew, of course, that it did not belong to them. We do not have here a case of a claimant possessing property belonging to others which through error claimant believes to be his. The evidence indicates that the possession exercised over this tract was almost identical to which a claimant would exercise over similar property to which he had title. Because of its isolation, defendant testified that the question of ownership never presented itself. According to his testimony, defendant claimed it was never required of him that he assert ownership during his many years of uninterrupted possession; the record owners never having made an appearance. Under cross examination defendant admitted that he had never posted the property and that he had not paid taxes on the property.
Counsel for Schexnayder takes the position that under Article 3488 of the Civil Code, which provides that squatters possess in their own name since they do not possess in the name of or for another, (emphasis added) Schexnayder's possession was that as owner. Counsel further correctly contends that fact of possession creates a presumption that possessor possessed as master and owner in regard to prescription of thirty years.
The difficulty with that position, however, is that while this is a strong presumption under our law, (See Theriot v. Bollinger, 172 La. 397, 134 So. 372 and Dunn v. Bayonne, La.App., 197 So. 284), that presumption will yield to possessor's own testimony that he did not intend originally to possess the property as owner. In the case of Humble v. Dewey, La.App., 215 So.2d 378, the possessor testified substantially as did Mr. Schexnayder in this case. Mr. Schexnayder stated on three different occasions during the trial of the case that while he was possessing the property in the same manner as he would have if he had had record title, he did not consider himself as owner until he was approached for an oil, gas and mineral lease some three years ago. Mr. Schexnayder stated in so many words that the oil company representative opened his eyes to the fact that his possession gave him a claim to the property.
The case of Crichton v. Krouse, La.App., 142 So. 635, cited by Schexnayder and decided in 1932 dealt with facts very similar to the case at bar. In that case, the intent of the claimant to possess as owner was inferred from the acts and conduct of the claimant. The claimant's children had brought the action to have their father's possession recognized. There the court said intention was a fact question to be determined by the trier of facts from all of the evidence submitted. However, this court feels that where the claimant personally appears and testifies as to his intention the trier of facts is bound by his judicial admission, notwithstanding other facts and evidence, which in the absence of claimant's admissions, would have constituted an acceptable basis to conclude that claimant's intention was to possess as owner.
Mr. Schexnayder's candor and that of his attorney must be commended. Without this damaging admission by Mr. Schexnayder, in direct examination as well as under cross, his claim was in perfect posture for him to reap the benefits of the presumption which our law grants unto a possessor. If Mr. Schexnayder had not testified or if he had chosen to lie, this Court would have been bound to grant him judgment. Failing to post the property, failing to pay taxes or to have had occasion to otherwise assert ownership under the facts as presented would not have been controlling. Although the Court has some degree of difficulty in fitting the facts of this case precisely under the rule of Humble v. Dewey, supra, and the long list of cases cited therein, the Court somewhat reluctantly concludes that it is duty bound to so do.
The Court therefore concludes that Mr. Schexnayder failed in this suit to establish his intention to possess the subject property as owner (emphasis added) for the time required to vest ownership in him."
*372 For the foregoing reasons, the trial court judgment is affirmed. All costs in the trial court are to be paid by Germania Plantations, Inc., and Victor Schexnayder. All costs of this appeal are to be paid by Victor Schexnayder.[2]
AFFIRMED.
NOTES
[1] Suit was erroneously filed in behalf of Standord J. Levy, Jr. The party actually involved was Stanford J. Levy, Jr.
[2] Germania Plantations, Inc., was originally named as a defendant and judgment was rendered against it. No appeal was taken on Germania's behalf. Therefore, no costs of this appeal are assessed against it.