422 So.2d 189 (1982)
John M. KELLEY, Plaintiff-Appellee,
v.
Arlton STRINGER, Defendant-Appellant.
No. 15035.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Rehearing Denied December 9, 1982.
Writ Denied February 4, 1983.
*190 Law Offices of Bobby L. Culpepper by Bobby L. Culpepper, Jonesboro, for defendant-appellant.
Whitten & Blake by Leon H. Whitten, Jonesboro, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
This is a boundary action. The plaintiff is John M. Kelley. The defendant is Arlton Stringer. After a trial on the merits the district judge rendered judgment fixing the boundary along the ideal line determined by the court appointed surveyor as per the record title of the litigants, rejecting the *191 demands for damages made by both parties and assessing costs against both parties. Stringer appealed and Kelley answered the appeal.
The assignments of error made by both parties present four issues for decision:[1]
1) has Stringer acquired the disputed area east of the ideal boundary by acquisitive prescription;
2) is either party entitled to damages;
3) what is the proper amount of the surveyor's fee; and
4) how should the costs of this proceeding be taxed.

The Facts
The parties are owners of adjoining tracts of land in rural Jackson Parish. Kelley acquired his property in 1979. The appellant acquired his property adjacent to the Kelley property from his mother's succession in 1971 and by deed from his brother in 1977. The disputed boundary is depicted in the sketch below.

The lands of Kelley and Stringer are separated by a fence. Kelley's witnesses testified that the northern portion of the fence was constructed by his ancestors in title in 1945 and was tied in to the older pre-existing southern portion of the fence. Stringer's witnesses testified that the fence was built by his ancestors in title in the 1920s.
At its southern end the fence encroaches slightly on land under Stringer's title and at its northern end the fence encroaches slightly on land under Kelley's title. The net difference is .05 acres in Stringer's favor. Neither the evidence nor the briefs contain any indication that either party denies that the fence on the southern part of the boundary which encroaches upon defendant's record title has not been the recognized visible boundary between the respective tracts by their respective owners for far more than thirty years.
This controversy flared after Kelley began making plans to build a home on his property. Because of a creek Kelley must build his driveway from La. Highway 811 along the extreme western edge of his property or incur the expense of bridging the creek. However, there is insufficient room between the west bank of the creek and the fence for Kelley's driveway to pass.
*192 Kelley contacted Stringer and told him that he planned to move the fence to the west to allow the passage of his driveway. Stringer objected and Kelley responded by cutting the fence. Stringer replaced the fence in its former place.
Kelley then brought this action to have the boundary fixed and also demanded damages, including attorney's fees, for trespass. Stringer answered pleading acquisitive prescription and reconvened for damages.
The district court appointed Albert D. Hulett, Jr., a registered land surveyor, to survey the disputed boundary. Hulett conducted his survey and the case was tried.
ISSUE # 1Acquisitive Prescription
The appellant pleaded the acquisitive prescription of thirty years provided by LSA-C.C. art. 794.[2] Though he found the fence to be more than thirty years old the trial judge rejected Stringer's plea of acquisitive prescription because he found that the fence had not been intended to serve as the boundary.
To prevail on the issue of acquisitive prescription Stringer must show that he and his ancestors in title have possessed as owners for thirty years without interruption within visible bounds. LSA-C.C. art. 794.
The trial judge found that the northern portion of the fence had been constructed by Kelley's ancestors in title. The plaintiff only had one witness who testified that he knew of his own knowledge that the fence was first placed along the northern boundary in 1945. The defendant had numerous witnesses that were familiar with the fence in the 1920s, 1930s and early 1940s, all of whom stated that the fence had been there long before 1945. These plaintiff's witnesses all had either lived upon the property or very near it. Two of the witnesses had farmed the property as share croppers in the 1930s. Two of the witnesses had cut timber from the property in the 1930s and early 1940s. All of these witnesses testified the fence as it exists today is in the same location where it existed long before 1945. For these reasons the trial judge's fact determination that the fence was first constructed by Kelley's ancestor in title in 1945 is probably clearly wrong but we do not find it necessary to make this determination because defendant has clearly acquired the property by acquisitive prescription whether the fence was placed there in the 1920s as contended by the defendant or in 1945 as contended by by the plaintiff.
The trial judge apparently based his conclusion that the fence was not intended to serve as the boundary on testimony by plaintiff that his ancestors in title purposely built the fence back from the property line.
Though the record supports the conclusion that Kelley's ancestors in title did not intend the fence to serve as the boundary between the two tracts, their intent is irrelevant to the issue presented for decision.
That a party does not intend a fence to serve as a boundary is immaterial and does not affect the rights accruing to the possessor. Scott v. Blanton, 115 So.2d 658 (La.App. 2d Cir.1959); Snellings v. Lutz, 219 So.2d 781 (La.App. 2d Cir.1969), writ refused 253 La. 1090, 221 So.2d 520 (1969); De Bakey v. Prater, 147 So. 734 (La.App. 1st Cir.1933); Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957). Thus, the intention of Kelley's ancestors in title is immaterial.
Our inquiry is whether Stringer and his ancestors in title have possessed as owners for thirty years without interruption within visible bounds.
The fence fulfills the requirement of a visible boundary. The record shows that for far more than thirty years Stringer and his ancestors in title have used the land up to the fence for row crop farming, pasturing cattle and cutting timber. Further, these activities went undisturbed until the *193 present dispute developed. Kelley and his ancestors in title never used any of the land west of the fence.
However, plaintiff contends that despite all the activities of Stringer and his ancestors in title the requirements of Article 794 are not met because they did not possess the disputed area as owners. In support of this contention plaintiff points to the fact that after he told Stringer of his intention to move the fence Stringer told him to have a survey done. This, it is argued, shows Stringer's uncertainty as to the location of the boundary and his lack of intent to possess as owner. We disagree.
A reading of Stringer's testimony shows that appellant considers the fence to be the boundary and has possessed the land to the fence as owner. Stringer believes an accurate survey would show the fence to be the boundary. Stringer believes the Hulett survey to be in error because of its failure to conform with the fence. It appears that Stringer suggested a survey only because he thought it would satisfy Kelley that the fence was correctly placed.
The fact of possession is presumed to be as owner unless it is shown to have begun in the name of and for another. LSA-C.C. art. 3488;[3]Dunn v. Bayonne, 197 So. 284 (La.App. 2d Cir.1940); Frost Lumber Industries, Inc. v. Harrison, 215 La. 767, 41 So.2d 674 (1949); Humble v. Dewey, 215 So.2d 378 (La.App. 3d Cir.1968); Levy v. Germania Plantation, Inc., 395 So.2d 366 (La.App. 1st Cir.1981); See also Jones v. Skannal, 368 So.2d 774 (La.App. 2d Cir.1979). Appellant is entitled to this presumption which has not been rebutted.
Stringer has proved that he and his ancestors in title have possessed as owners the property up to the fence for more than thirty years without interruption. The trial judge erred in not sustaining defendant's plea of acquisitive prescription and fixing the boundary according to the limits of possession.

ISSUE # 2Damages
Both parties contend they are entitled to damages by reason of the trespasses committed by the other. Plaintiff seeks attorney's fees and damages for trespass and the loss of use of property. Defendant reconvened for attorney's fees and damages for the invasion of his property rights, destruction of the fence, the cost of restoration of the property and mental anguish and suffering.
Trespass is the unlawful physical invasion of the property or possession of another. Patin v. Stockstill, 315 So.2d 868 (La.App. 1st Cir.1975). Any trespass in this matter must stem from activities on the disputed area. As we have found that Stringer is the owner of the property to the fence, including the disputed area, his activities on the disputed area do not constitute any trespass upon Kelley.
Kelley only cut the barbed wire fence at one or two places and removed only one post, all in a very limited portion of the fence. Stringer offered no evidence as to the cost of material and labor required to repair the fence. The damage that Kelley did to the fence was very slight.[4]
The record contains no proof that Kelley went on the lands of Stringer or committed any acts which damaged Stringer's land. The record contains no proof of any of Stringer's asserted damages other than his mental anguish and suffering. It appears from the record that the extent of Stringer's mental anguish and suffering was merely a state of minor annoyance for which an award of damages would be inappropriate.
Stringer has not established that Kelley owes him any damages for trespass.
*194 We also note that though both parties demanded attorney's fees, they are not recoverable in cases such as this. Nassau Realty Co., Inc. v. Brown, 332 So.2d 206 (La.1976); Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978); Inzer v. Hollis, 339 So.2d 522 (La.App. 2d Cir.1976), writ refused 341 So.2d 1124 (La.1977); Gewin v. Willamette Industries, Inc., 406 So.2d 730 (La.App. 3d Cir.1981).

ISSUE # 3Surveyor's Fee
Stringer contends that the trial judge fixed the court appointed surveyor's fee at an excessive amount. Kelley agrees that the fee was fixed at an excessive amount but contends that the court should have awarded an additional amount to the surveyor as an expert witness fee for his testimony. Hulett submitted a bill for $2,560.00 for the survey and requested an additional expert witness fee of $200.00 for his testimony on Kelley's behalf. The trial judge fixed the surveyor's fee at $2,255.00 and taxed it as an item of costs.
Fixing of the surveyor's fee is largely within the discretion of the trial judge. Sessum v. Hemperley, 83 So.2d 546 (La.App. 2d Cir.1955), reversed on other grounds 233 La. 444, 96 So.2d 832 (1957). An award of expert witness fees lies within the discretion of the trial judge and will not be altered absent a showing of an abuse of discretion. Smith v. Travelers Indem. Co. of Rhode Island, 374 So.2d 708 (La.App. 1st Cir.1979). The trial judge is not required to set the fee at the amount charged by the expert. Veuleman v. Sims, 382 So.2d 245 (La.App. 3d Cir.1980).
The survey made by Hulett took several days and was carefully executed. There were three and sometimes four men in the survey crew. Hulett's testimony at trial was not lengthy and much of it dealt with the procedures used in his survey. The fee of $2,255.00 fixed by the judge and assessed as costs is sufficient to compensate the surveyor for the survey and his testimony. There was no abuse of discretion by the trial judge.

ISSUE # 4Costs
The final issue before us is which party should bear the substantial costs of this proceeding. Both parties bitterly complain of the joint assessment of costs made by the trial judge. Each contends that the other should bear the costs of this matter as the unsuccessful party.
When a boundary is judicially fixed the costs are to be taxed in accord with the provisions of the Code of Civil Procedure. LSA-C.C. art. 790. The Code of Civil Procedure provides that costs may be taxed in accord with equity. C.C.P. art. 1920.
This action was precipitated by Kelley's conduct. He commenced it solely for his own ends and benefit. From the record it appears that Kelley never made any real effort to settle this matter without legal proceedings. Instead, Kelley uncompromisingly announced his intent to move the fence onto what Stringer properly considered his own property. Kelley initiated these proceedings. If Kelley had made an inquiry of the people in the area who had lived there during the preceding thirty years, he would probably have learned that Stringer and his family, who were his ancestors in title, had continually possessed the disputed area up to the fence for more than thirty years. We note that Kelley placed no witness on the stand who contradicted defendant's extensive evidence of possession for more than thirty years.
All of Kelley's demands have been rejected by us and we have recognized Stringer's claim of acquisitive prescription. In light of our resolution of the merits of this case and Kelley's role in fermenting this controversy, equity demands that he bear the entire costs of this proceeding.
For the foregoing reasons the judgment of the district court is amended to fix the boundary along the fence shown on the survey of Albert D. Hulett, Jr., filed in this suit, dated November 12, 1980, and to assess all costs against the plaintiff, John M. Kelley.
As amended the judgment is affirmed.
NOTES
[1] Stringer contends that the trial judge erred in:

1) fixing the boundary along the "ideal" line;
2) failing to sustain his plea of acquisitive prescription;
3) rejecting his demands for damages;
4) assessing one-half of the costs against him; and
5) assessing an excessive amount for the surveyor's fee as costs.
Kelley contends the trial judge erred in:
1) not awarding an expert witness fee to the surveyor for his testimony;
2) assessing one-half of the costs against him; and
3) rejecting his demands for damages.
[2] C.C. art. 794"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds."
[3] C.C. art. 3488"As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another."
[4] Any interest which Stringer might have had in the fence through LSA-C.C. art. 685 would not avail him of any recovery because of the lack of proof of damages.