GLADNEY, Judge.
This is one of two possessory actions involving a seventeen-acre tract of land situated in Winn Parish, Louisiana, which actions have been consolidated for purposes of trial. In the instant case Tre-mont Lumber Company filed suit against Howard Hand alleging its possession as owner of eighty acres which include the above referred to smaller tract. The defendant has not contested Tremont’s possession of the other portion of the eighty-acre tract. Disturbance by the defendant is conceded, and the petition alleges that Hand, while in possession as Tremont’s tenant, has notified it of defendant’s intention to possess as owner. Howard Hand first filed an exception of lack of sufficient possession but subsequently answered, reserving his rights under the exception which was referred to the merits. In his answer he asserted possession as owner of the seventeen acres involved and *97 reconvened for recognition of his own possession. He further prayed for judgment ordering plaintiff to assert any adverse claim of ownership within a reasonable time or be forever barred from doing so. The case was tried upon its merits and resulted in a judgment favorable to the Tre-mont Lumber Company, from which decree Howard Bland has appealed.
Many issues were settled by agreement or stipulation of counsel and at the time of trial the single issue presented to the trial court (and this is true also as to this court) is whether Howard Hand occupied the property with the intention of possessing as the owner thereof, or instead whether he initially occupied it as a tenant and subsequently as an agent or through sufferance of the Tremont Lumber Company.
It is not disputed that Howard Hand and his family moved onto the property in question during the fall of 1928, at which time the land was improved with a number of buildings, and was under a state of cultivation by its former possessor, M. M. “Bud” Allen. At that time the property was completely enclosed by fences and has remained continually under fence. Hand owned and occupied a residence on the property, together with a barn and several out-buildings. Over the years he has raised cotton, corn, potatoes and other products for market, as well as garden crops for himself. He has pastured livestock on the place and this kind of corporeal 'possession has been exercised by him since 1928. When defendant first occupied the property he had five children and four have been born on the property which presently is in his possession. Prior to the occupancy of the defendant, the record title to the subject property was actually in the name of a Mrs. Boyd, a relative of M: M. “Bud” Allen. The latter owned the improvements on the property and testified that he had actually purchased the land on which the improvements were located, but had never secured a deed therefor. During the early part of 1928 Mrs. Boyd and Allen confect-ed certain transfers of title whereby the eighty-acre tract, more particularly described as the N 54 of the NE 54, Section 28, Township 11 North, Range 1 West, was sold by Mrs. Boyd to Tremont Lumber Company and Tremont Lumber Company, in turn, sold to Mrs. Boyd, who thereupon conveyed to Allen, a parcel of the land near the City of Winnfield, to which he moved in 1928. After this transaction Allen sold to Howard Hand the improvements owned by him on the land in question. The transaction between Allen and Hand, which was not in writing, constitutes the source of Hand’s possession of the property involved in this litigation.
The position taken by counsel for the appellant is that the record fails to establish the fact that Howard Hand at any time occupied the property as tenant, agent or through sufferance of Tremont Lumber Company; that it .is not disputed that the possession of Hand has been open, visible and continuous since 1928; and that because of the character of this possession, it must be presumed that Hand possessed the property as owner thereof. The trial court rejected these contentions, being of the opinion that the preponderance of the evidence adduced in favor of the appellee indicated that the appellant did not possess the land as owner.
Tremont Lumber Company produced a number of witnesses who testified in its behalf, including M. M. “Bud” Allen, H. V. Dunford, R. E. Allen, Estes Bozeman, Rayford Roark and W. C. Wright. The defendant, on the other hand, in addition to his own testimony, presented as his witnesses his two sons, Cody and David Hand, and three of his neighbors, Clarence Long, Mrs. J. R. Malloy and Floyd Smith. The testimony of M. M. “Bud” Allen, H. V. Dunford and of the defendant himself, is of special significance.
M. M. “Bud” Allen, after testifying that he sold the defendant only the improve *98 ments on the property and not the land itself, testified as follows :
“Q. Did you explain or tell Mr. Hand that that’s what you were selling him?
“A. Yes, he understood it.
“Q. Did you understand that you were selling him the land?
“A. No.
“Q. Did he have any reason to understand that?
“A. No, I told him. Mr. Abels was the man down there that was at Rochelle and I told him to go to Mr. Abel and make it alright with Mr. Abel. It was in a way understood that I was to move the improvements and he went down there and come back and said that he had made the arrangements for $5.00 a year.
“Q. And Mr. Abel worked for who ?
“A. He was with Tremont Lumber Company. He had the same job that Mr. Dunford has now. He was general land man.”
Howard Hand testified to a different understanding from Allen, with respect to his acquisition:
“Q. What did you buy from Mr. Allen, Mr. Hand?
“A. I bought the improvements.
“Q. Bought the improvements on the land?
“A. Yes, sir.
“Q. And that’s all you bought, wasn’t it, Mr. Hand?
"A. I bought the improvements in this enclosure, what I call the improvements is that fence and what’s inside of it. This land here is land you cultivate. He was cultivating it at the time I moved there. Had a crop on it. Was gathering potatoes out when I moved there and this cane there, he had cane there. He cut it after I moved there and that’s what I got. This was improved land, don’t you see. Improved land, the improvements, the enclosure.
“Q. Did you buy the improvements?
“A. Yes, sir.”
Hand further testified he paid Allen $150.00 and that it was his understanding that the land was included with the improvements.
Allen controverted Hand’s testimony in several respects, stating that he told Hand to go down to see Mr. Abel, who then was the land agent for Tremont Lumber Company, and make it all right with him; that Hand did go down to see Abel and came back to tell him that he had made the arrangements for $5.00 per year. However, Hand sought to explain this testimony by asserting he rented from Abel a different piece of land from that herein involved, and stated that after paying Abel for one year and signing the papers for another year, that was the end of it and he never did return to see Mr. Abel again.
H. V. Dunford succeeded Mr. Abel as manager of the forest and land department for the Tremont Lumber Company. He testified that on several occasions he attempted to collect back rent from Hand but to no avail, and finally worked out an agreement whereby Hand would look after Tre-mont’s interest in that territory in exchange for the rental of the land and they would waive the cash rental. Hand denied this, asserting that he never made such an agreement with Mr. Dunford and that no one ever came by his house to collect such rent. Counsel for the defendant stresses the fact that Dunford admitted Hand had not reported any fires or trespasses and that on only one occasion had he sent word that a tree was cut by a trespasser on Tremont’s land, and argues this fact suffices to negative the testimony of Dunford. The testimony of R. E. Allen, Estes Bozeman and Rayford Roark was to the effect that they hauled logs *99 and pulpwood through the enclosure of Hand, but each of these witnesses stated that Hand was first notified of their intention to pass through his property and they had asked his permission to do so. Dunford testified that this practice was in accordance with courtesy and his instructions to his employees to ask permission of Hand when going through his property.
The record makes it clear through Hand’s admission that he never attempted to have the property assessed to him, that he never filed a homestead exemption, and never paid any taxes on the property throughout the entire period of his occupancy. Dunford also testified that about the year 1936, at the request of Howard Hand, he signed an application for the defendant to get a farm loan to permit him to plant six acres of oats in the oat program. Hand again denied that this property involved the land herein litigated, and his position was that the instrument simply was for the purpose of indicating that Tremont Lumber Company was not claiming the property as owner thereof. Dunford testified that the original lease prepared for Hand by Mr. Abel, as was the agreement to act as agent, was lost a number of years ago when the office of the company was moved.
The two sons of Howard Hand testified only to the fact that they had been living on the property since 1928. The wife of Hand, although living, was not called as a witness. Hand also tendered the testimony of Floyd Smith, Mrs. J. R. Malloy and Clarence Oscar Long, his neighbors. These, however, testified as to their lack of knowledge of whether the plaintiff or the defendant was reputed to own this seventeen-acre tract of. land. In commenting upon the examination of these witnesses, the trial court made this observation:
“It is interesting to note that not any of the three neighbors were asked the question whether Mr. Hand had ever claimed to own the land or held himself out as owner, but when asked the question whether they knew who owned the land, they answered that they did not know although they were called as witnesses on behalf of Mr. Hand.”
Strongly adverse to his own position of possessing the property as owner thereof, is the testimony of the defendant himself, as reflected below:
“Q. Had you ever made known to Tremont your claim of ownership before you threw the stake back when they were making a location?
“A. No, sir.
“Q. You never had?
“A. No, sir.”
It is our finding, after carefully weighing the testimony of all of the witnesses who testified, that the preponderance of the evidence establishes defendant’s occupancy or possession of the property was without any intention by Hand of possessing the land as owner thereof and accordingly, we find no error in the judgment from which appealed.
Counsel for appellant has relied upon as supporting his position, Hearne v. Miller, 18 La.App. 551, 138 So. 151 (2d Cir.1930); Dunn v. Bayonne, 197 So. 284 (La.App.2d Cir.1940); and Frost Lumber Industries, Inc. v. Harrison, et al., 35 So.2d 832 (La.App., 2d Cir.1948). These authorities merely reflect the principle of law enunciated in LSA-C.C. Art. 3488, which reads:
“As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another.”
In our resolution of the issues of this case we have sought to apply this statutory rule. Equally relevant to our decision, however, are certain other articles of the Civil Code. Among these are LSA-C.C. Arts. 3441, 3446 and 3510, which, in effect, provide that those who do not possess for themselves but in the name of another, can *100 not acquire the legal possession; that possession is lost with the consent of the possessor; and that those who possess for others and not in their own name, cannot prescribe, whatever may be the time of their possession.
As pointed out in a well written opinion by the trial judge, the record fully substantiates the conclusion that Tremont Lumber Company is entitled to the relief which it seeks. Accordingly, It is, Therefore, ordered, adjudged and decreed that there be judgment herein in favor of Tremont Lumber Company and against Howard Hand, restoring and maintaining Tremont Lumber Company to the full, peaceful and undisturbed possession of the North Half of Northeast Quarter (N 14 of NE Section 28, Township 11 North, Range 1 West, Winn Parish, Louisiana, and ordering the defendant, Howard Hand, to vacate the permises within sixty (60) days from the date on which this judgment becomes final.
The judgment is affirmed, costs of this appeal to be paid by the appellant.