LOTTINGER, Judge.
Plaintiff-Appellee, Harry Bourg Corporation, instituted this petitory action on May 6, 1964, against Howard Parfait, Barrios Matherne and Eloi Parfait, claiming title to certain lands situated in the Parish of Terrebonne in Section 87, T 19 S, R 17 E, and more particularly described as follows, to-wit:
1st. Section five of Township Twenty South, Range 17 East, Southeastern Land District of Louisiana, located West of the Mississippi River, situated in Terrebonne Parish, Louisiana; Less *406 and excepting therefrom the following, to-wit:
(a) That portion of said Section 5, T 20 S, R 17 E, which lies within the Louis Cossier Grant.
(b) That portion of said Section 5, T 20 S, R 17 E, which is already owned by the vendee, Harry Bourg.
2nd. All that portion of the LOUIS COSSIER GRANT, situated in the Parish of Terrebonne, Louisiana, T 19 S, R 17 E, and in T 20 S, R 17 E, that lies on the West or right descending bank of the Bayou Grand Caillou, being about eighteen miles below the City of Houma, and measuring a front of forty (40) arpents, more or less, on said right descending bank of said Bayou by depth of forty (40) arpents, more or less, bounded above by the John Charles Theriot Grant, and bounded below by Lots 2 and 3 of Section four (4) and Lots 3, 4, 5 and 6 of Section five (5), T 20 S, R 17 E. (Said property being a portion of the old Live Oak Plantation of John A. Quitman, See C. B. “G,” Folio 116, and 494; Also C. B. “H”, Folio 79).
Less and except therefrom the following described parcels of land, to-wit:
(a) Six arpents front on said Bayou by depth of survey, situated at the extreme lower or Southern end of said property; Being Lot No. 1 on a plan of survey made by T. S. Easton, Surveyor; Sold to Celestine Dubois by John Barkley on March 9, 1895, by an act before Aubin Bourg, Clerk, of record in C. B. “PP”, Folio 216.
(b) Two arpents front on said Bayou by depth of twenty arpents, lying just above the Celestine Dubois Tract, sold to Franklin Luke by said John Barkley on March 9, 1895, by an act before Aubin Bourg, Clerk, recorded in C. B. “PP”, Folio 214; Being Lot 2 on said plan.
(c) One arpent front on said Bayou by depth of twenty arpents, lying just below the Luke Boudreaux tract next described, sold to Eugene Colin, Jr., by John Barkley on April 2, 1895, by act before Aubin Bourg, Clerk, of record in C. B. “PP”, Folio 271, being Lot 11.
(d) Two arpents and seventy-one feet front on said Bayou by depth of twenty arpents, lying just above the tract of Eugene Colin, Jr.; sold to Luke Bou-dreaux by James W. Martin, on March 23, 1901, by act before H. M. Bourg, Deputy Clerk, recorded in C. B. “W”, Folio 47; being Lots 12, 13 and a portion of Lot 14 on the aforesaid plan by T. S. Easton.
(e) One and one-half (1(4) acres front on said Bayou by depth of ten arpents, lying just above the Luke Boudreaux Tract, sold to James Carlos by James W. Martin and James M. Breaux on April 21, 1900, by a private act acknowledged before Joseph A. Waguespack, Justice of the Peace, 4th Ward, Terrebonne Parish, of record in C. B. “TT”, Folio 658; being a portion of Lot 14 and Lot 15.
(f) One 'arpent front on said Bayou by depth of twenty arpents, lying just above the James Carlos tract; sold by John Barkley to Connely Luke on April 2, 1895, by act before Aubin Bourg, Clerk, recorded in C. B. “PP”, Folio 269; being Lot 16 on said plan.
(g) Two arpents front on said Bayou by depth of twenty (20) arpents, lying just above the Connely Luke tract; sold to James B. Cenac by J. W. Martin and Albert Montegut on May 3, 1902, by an act recorded in C. B. “XX”, Folio 54, being Lots 17 and 18 on said plan.
(h) Four arpents front on said Bayou by twenty arpents deep lying just above the Jean B. Cenac Tract, sold by J. W. Martin to Franklin Fanguy on January 17, 1903, by an act before *407 C. A. Celestin, recorded in C. B. “XX”, ' Folio 468; being Lots 19, 20, 21 and 22 on said plan, by T. S. Easton.
(i) Two arpents front by depth of twenty arpents, lying just above the Franklin Fanguy tract, sold by James W. Fanguy to Pierre Serán Malbrough on January 17, 1903, by an act before C. A. Celestin, Clerk, recorded in C. B. “XX”, Folio 463; being Lots 23 and 24 on said plan.
(j) A certain tract of land situated on the right descending bank of the Bayou Grand Caillou within the said Louis Cossier Grant and at the extreme Northern or upper end thereof; having a depth of ten arpents, between parallel lines, from said Bayou, and having a frontage along said Bayou as follows: Begin on the right descending bank of said Bayou at the point where it intersects the Northern boundary line of the said Louis Cossier Grant, thence proceed in a Southerly direction along said right descending bank of said Bayou to a point located two arpents above or North of the upper boundary line of the property belonging to Jean B. Parfait, now or formerly.
Plaintiff alleges that it has been in possession of all of the said property except for a small portion which is in the possession of the defendants, who assert no title or right of possession, but refused to deliver possession to plaintiff. In its petition, plaintiff prays to be recognized as the owner of the property and entitled to the full and undisturbed possession thereof, and further, that the defendants be ordered to deliver possession of the property to plaintiff.
In defendant’s answer, Howard Parfait alleges that he has occupied the property in his possession continuously and without interruption, and with fences completely encircling the same since February, 1932. He further alleges that the property “measures two arpents fronting on both sides of the Bayou Grand Caillou and on the other side of said Highway by depth of eight arpents”. That in addition to his residence on the property, Howard Parfait further alleges that he has planted gardens, raised chickens, hogs, and cattle, built and maintained fences around the premises, and rented portions thereof to Barrios Matherne and Eloi Parfait. It is lastly alleged that the defendant, Howard Parfait, “has acquired the property hereinabove mentioned in its entirety by virtue of prescription acquieda causa, and by virtue of articles 3499 et sequence of the Louisiana Revised Civil Code.”
The Trial Judge concluded, and we are in complete agreement, that there is no question as to plaintiff having a title of record. The only issue then, as concluded by the Trial Judge, is whether Howard Parfait has possessed sufficiently for thirty years the particular area which he claims.
We have made a thorough study of the record in this case, and are in agreement with the summation of fact as presented by the Trial Judge in his written reasons, which summation of facts we adopt and quote.
“The testimony of Howard Parfait is that he moved to the property on February IS, 1932, in a house boat (TR-A-2); and that he put the boat on shore ‘2 years or 3 years after’ (TR-A-2) ; and that he built fences ‘about 2 years or 3 years after. About 2 years after he was there’, he built fences. He then testified (TR-A-13) that he built a fence ‘on this side of the road’ (indicating the area between the bayou and the road) first, and then built a fence later on across or west of the road. His testimony varies slightly (TR-A-13) when he says that ‘25 years I got fences up there’ and ‘it would give me on the other side of the road about 26 or 27 years.’. The testimony that the fence on the west side of the road was built later than the fence between the road and the bayou, is confirmed by other witnesses. But the testimony of *408 Howard Parfait, the claimant himself, falls short of the prescriptive period of 30 years required by law; and hence, his claim to the area west of the road enclosed by the lines H-I-J-K-H must necessarily fall.
******
We make the observation that Howard Parfait asserted that the area he was claiming was ‘two acres wide and about 8 or 9 acres deep’ (TR-A-2). An examination of Exhibit ‘P-4’, the possession map, shows the actual acreage to be considerably less than that. The tract west of the public road shows a maximum width of 338.29 feet and a total acreage of 4.714 acres; while the area within the lines A-B-C-D-EF-G-A, shows a width much less than that claimed. Indeed, the total area within the lines indicated is 1.212 acres. We have already shown that Parfait has not carried the burden of proof as to the tract of 4.714 acres west of the highway. Hence, our attention hereafter shall be directed exclusively to the tract of 1.212 acres situated between the bayou and the road.
Parfait’s testimony (TR-A-2) is that he moved where he is on February 15, 1932; that he was in a house boat when he came there; and that he put it ashore 2 or 3 years afterwards. (TR-A-8) He stated that he started constructing his fence right after he moved on the property (TR-A-3) ; and he repeated that he built the fences 2 or 3 years after he was there (TR-A-3). He denied that his houseboat was ever tied up in front of the property of Jean Marie Parfait. Parfait stated (TR-A-6) that T keep account of what I’m doing.’ * * * <just keep jt like that in my head’. He testified that he had moved around from place to place, but that since 1932 he always stayed where he was (TR-A-6).
He knows Howard Fanguy but he doesn’t recall ever having a ‘party’ on his houseboat or that Howard Fanguy was ever on his houseboat for any occasion.
He testified that Harry Bourg used to stop and speak with him at his home (TRA-10). He heard in 1934 that Bourg claimed the land. He was never told to move nor did he ever pay rent. His son Ozeme, who was living right below him, was paying rent to Harry Bourg. That Parfait was not claiming the triangular strip within the lines A-D-M is indicated by his testimony (TR-A-14) to the effect that he has a fence next to his house but that the next fence further up the bayou (which is necessarily the fence along the line L-M) ‘that ain’t me put that one up’; and that the property enclosed between the fence next to his house and the other fence further up is not claimed by him, ‘that don’t belong to me’.
NOTE: — His son Edward Parfait was having his 34th birthday on June 12, 1964. He was born in Dulac.
Barrios Matherne testified on June 12, 1964 that he had been knowing Howard Parfait about 28 years (TR-A-19, 21 and 22). He stated that he met Parfait when he got him to ‘treat’ his little boy by his first marriage, who is 27 years old. T come to treat my little boy there’ (TR-A-24). His testimony is that in 1933 the boat was in the water and in 1934 it was on the land (TR-A-24). He was uncertain of any fences being up in 1933 but was sure of 1934. During that time the witness was working on a tug boat that passed in the bayou. Subsequently, he was transferred elsewhere.
On October 18, 1965 the same witness, Barrios Matherne, testified that he had > known Parfait about 12 years (TR-B-51 and 54). On the last occasion he testified, he stated that he had been living on Grand Caillou about 5 or 6 years, 3 years in a house on the ‘Parfait property’ and that he was living with Parfait’s daughter.
Mary Lucy Parfait is 39 years old (TRA-26). She can not recall when her father moved on the place where he is now living. ‘All I can remember is that we always lived there.’ ‘All I can remember that’s the only place we ever lived.’ She cannot *409 recall when the houseboat was pulled ashore nor when any of the fences were built. She can remember when her father built the house, but she does not remember when (TR-A-28).
Camille W. Billiot was born in June, 1909 (TR-A-28), and has known Parfait about 45 years. He states that T figure about 31 or 32 years he’s lived where he’s at there’. Billiot stated that he recalls the time because he and his father would haul oysters to town for Philogene Engeran and at night they would pull up and sleep near the house of Parfait. In those days Parfait ‘was living in his camp boat’. ‘It was in the water, but it wasn’t floating.’ (TR-A-31) He says he saw Parfait build fences in 1931 and 1932.
Billiot testified that he lived on property adjoining Parfait for 11 years under lease from Harry Bourg, at the end of which time he returned to reside on Bayou Dularge, where he has been living for about 13 years. He fixed his place of residence near Parfait at 24 years before the date of trial. His lack of relationship to time is indicated by his testimony that he worked in the oyster business with his father around 20 or 25 years. ‘Between 20 and 25 I guess. Maybe 30 years. I don’t know exactly.’ (TR-B74).
Joseph Naquin is 68 years old and has known Parfait since 1930 (TR-A-34), since which time he has been living on Grand Caillou (TR-A-35). He resides 2 or 3 miles from Parfait. T know he’s there since 1932 or 1931. I would pass in the Bayou and see his camp boat ashore.’ He stated that it is in the same place that Parfait now resides, and that T cut weeds for him in his yard’. He also stated that there were fences around the place in 1931 and 1932. It is NOTED that the dates of residence and fence construction given by this witness as well as others antedates the times given by Parfait himself. The witness testified in October, 1965, that he had moved to Grand Caillou 25 years ago from Isle de Jean Charles, that he has known Howard Parfait since he resides on Grand Caillou, but did not know him before he moved there (TR-B-60).
Dennis Parfait testified that he is 54 years old and a brother of Howard Parfait. He states that his brother ‘came there in 1932’ — ‘that’s the same year I got married’ (TR-A-39); and that he ‘put his camp boat on the ground’ — ‘the next year after he was there’. He testified that his brother was residing there a short time before he married, and he married March 24, 1932. On cross examination (TR-B-39), the witness was shown marriage license No. 1460 dated October 16, 1939, which he recognized as his marriage license, but which he explained with the statement that he ‘took’ his wife on March 24, 1932, but that he married her on the date indicated on the license.
The witness testified that all of the area made the subject of this proceeding (both the property between the bayou and the road, and the property west of the road) was fenced in 1932. (TR-B-36 and 43).
Houston LeCompte is 67 years old, and has lived on Grand Caillou and known Howard Parfait all his life (TR-A-41). He thinks that Parfait came to his present residing place in 1931 or 1932, at which time LeCompte was working nearby on Live Oak Plantation (TR-A-43). In 1931 and 1932 he noticed that there were fences built (TRA-45). As far as the witness can remember, the property in which the houseboat was placed ‘was Mr. Malbrough’s place’.
The witness stated he raised a second family since Parfait has been there, but he does not remember when he remarried (TR-B-64). His testimony (TR-B-65) indicates that his second marriage took place not more than 22 years before his appearance in Court. He used to pass this property in a boat almost every day. At one time he worked on Dulac Plantation, but he does not remember the years.
Henry Billiot was born in 1895 and has known Howard Parfait since he is 6 years old. The witness does not know when Parfait first moved where he is, but T be- *410 Heve that’s about probably close to 30 some odd years’ (TR-A-47), because he knows he’s been there ‘a pretty good while’ (TRA-49). He testified that in 1931 and 1932 he was working out in the Gulf, that he ‘didn’t travel much down that bayou’, but traveled in other places. His testimony is that after he stopped working on the Gulf, he worked for the Parish for 7 years, from which work he retired 3 years before his appearance in Court (TR-A-49). When questioned as to how he could fix the time when Parfait moved onto the property, all he could state was ‘he’s been there a pretty good while’. ‘I don’t know what time he moved on the land.’ ‘I know his camp boat was ashore when I went to work for the Parish.’
Octave Ozeme Parfait is a son of Howard Parfait. He stated he was born February 25, 1932. His testimony given on October 18, 1965, that he was born February 25, 1932, and that he ‘will be 43 years old in February’ (referring to February, 1966) indicates that his probable date of birth was February, 1923. He stated that he was living on Grand Caillou ‘since my daddy was living on Grand Caillou’ and he was 9 or 10 years old when they moved there (TR-B-31). He recalls helping his father build fences. The witness examined Exhibit ‘P-4’ and identified the fence along the line L-M-E as having been constructed when he was about 9 or 10 years old, although his father’s testimony was that ‘that ain’t me put that one up’. The witness further testified (TR-B-32) that he did not remember whether all the fences were built while the family was living on a houseboat on the water ‘but almost all of them’.
WHitney J. Luke resides about a mile or a mile and a quarter up the bayou from Howard Parfait (TR-B^)4). He has known Howard Parfait about 40 years. His recollection is that Howard Parfait lived where he is now about 33 to 34 years, and that Parfait built the fences ‘not too long’ after he got there. When questioned as to when Howard Parfait moved to where he resides, he stated that T can’t remember the date, you know, but I been living down Grand Caillou all my life and I passed there often and all the time he’s got the same place’.
Willie Luke was born August 8, 1924 (TR-B^-9), has lived all his life on Grand Caillou and has known Howard Parfait all his life. He does not know ‘exactly’ when Parfait moved to his present abode, but T do know ever since I know him he’s been living where he’s at now’; and that he has raised cattle, pigs and chickens and has planted a garden. He knows that Parfait has a fence around his property but when questioned ‘of your own knowledge do you know whether he ever constructed the fences?’, his answer was, ‘Yes. He told me.’
Alcide Francis testified (TR-B-55) that he is 79 years old and has lived on Bayou Grand Caillou all his life and has known Howard Parfait all his life. He stated that Howard Parfait was living where he is now ‘not less than about 35 years’ (TRB-55). He knows there were fences there and that they have been there a ‘pretty good while’ (TR-B-56). He then estimated that the fences were built ‘about ’33, ’34, something like that’. He stated that Parfait had moved there 34 or 35 years ago (TR-B-57). A little bit later he stated 36 or 37 years (TR-B-58), and on further questioning said that ‘it could be 25 years’. He said the fences were built about 36 or 37 years ago (TR-B-59).
Eulice Dion (TR-B-76) is 38 years old and has known Howard Parfait since he is about 8 years old, at which age his parents died and he then lived in several places. At the time of his parents death, they were living about 3 miles down the bayou from Howard Parfait. He recalls Howard Parfait working on the property and raising cows, hogs and chickens, and potatoes and corn.
Clement Parfait (TR-B-82) is 63 years old, is a first cousin of Howard Parfait *411 (TR-B-83), and has known him all his life. He stated that Parfait has been where he is ‘more than 30 years — but not less than 33 years’. He used to visit Howard Parfait. When asked if he knew who built the fences, he stated he did not know, but that ‘it must be him’. He testified that he has been married about 32 years, and that Parfait was living on the property before he got married (TR-B-83). Before Howard Parfait moved to this property, he lived in front of the witness’ house on Bayou Dulac, ‘but I can’t say how long he stayed’.
******
George Thomas Jordan is 60 years old and resides at Alexandria, Louisiana (TR-B-85). He is familiar with the property involved in this law suit. He first became familiar with this property in 1941 when he bought it from Mr. Pettigrew. Mr. Jordan testified that when he arrived in Terre-bonne in 1941, Mr. Bourg informed him that a Mr. Pettigrew had some land that he ‘could probably buy and wanted me to go over and walk this land to see if it would be suitable for what I wanted.’ The land adjoined the property of Bourg and he was informed that he ‘could locate the property from Jean Marie Parfait’s place’ (TR-B-86). ‘Mr. Bourg was going to finance the place and insisted that I walk the whole place so I would not be dissatisfied later on. Then I went on Jean Marie Parfait’s tract and stepped off approximately 2 acres to get to the lower line of what I bought, because I did buy in July of 1941. At that time there was no one on the bayou side. There was 2 acres that I could see all growed up in weeds and also about growed up in roseaus.’ The witness identified the property on the exhibit attached to the plaintiff’s petition. He investigated the property in May, 1941, and made the purchase in July, 1941 (TR-B-87). He stated he actually moved onto this property in October, 1941.
‘Mr. Bourg gave me permission to run a fence across his land and also permission to trap any land he bought in the Louis Cossier Grant from Mr. Pettigrew. I got all of the land back of my place and joined below with Mr. Bourg and at the time was trapping there up to ’45, 1945.’ (TR-B-87). He fenced in the property west of the road. Nothing east of the road was fenced.
Jordan stated that he had been knowing Howard Parfait for about 35 or 40 years. ‘Mr. Bourg said he had given John Parfait permission to use the land between the road and the bayou and that was all.’ He said he had always known Parfait as John Parfait. And, he identified him as the Howard Parfait who had testified in Court. He said no one was living on the property when he went across it in 1941.
The first Jordan knew of any possession on the property involved in this suit ‘was in ’42 when they started to pull a boat up in there’. He stated there were no fences whatever before 1941.
Jordan stated he first came to Terre-bonne in 1923 and moved to Grand Caillou (TR-B-89). At that time he bought a place from Mr. Toujan on the east side of Bayou Grand Caillou. He lived there about ten years, then he moved back to Alexandria. He moved back to Terre-bonne in 1941 and on to the property he bought from Mr. Pettigrew. He examined the land to see if it would be suitable for farming because he was a farmer (TR-B-90). Jordan did not know where Howard Parfait was living in 1941. He was positive he passed over the Howard Parfait tract, ‘went down to Jean Marie’s tract and I stepped off approximately 2 acres and that tract I was going to buy was suppose to start there.’
‘The only one I knew living in that area was the widow of Jean Marie, her and her son.’ (T-B-91). The witness planted the property for 5 years in sugar cane, potatoes, beans and com (TR-B-92). He also trapped on the west side of the road. He trapped all of his own and the Bourg property on the west side of the road.
*412 When he moved there he did not see Parfait until 1942 (TR-B-92)
C. J. Domangue is an employee of Au-thement Packing Company, the Constable of Ward 4 of Terrebonne Parish and a Deputy Sheriff. He testified that he married August 12, 1940, at which time he was living in Houma, and that about 6 months later he moved to Grand Caillou.
He testified that he has known Howard Parfait about 25 years, and that when he first met Howard Parfait the latter was living on Grand Caillou about half a mile or a mile above the property in dispute in this case, at which time Parfait also worked for Authement. He stated that at the time Parfait was living in a camp boat, which was partly in the water (TR-B-95). He testified that he went out with Parfait 2 or 3 times, buying shrimp, oysters or other seafood for Authement, ‘when the old man was sick’ (TR-B-97). His testimony is that he went to Parfait’s house where it is now situated, and where Parfait would pick him up. There is nothing in Do-mangue’s testimony to indicate when Parfait moved on the property involved in this proceeding.
Albert Bourg testified that his father, Harry Bourg, bought a large tract of land from Ashby W. Pettigrew in 1934. Exhibit ‘P-36’ shows the date of purchase to be March 27, 1934, and the deed apparently excludes the tract later sold by Pettigrew to Jordan as shown on the plat annexed to the said exhibit (TR-B-98), a copy of the exhibit is annexed to plaintiff’s petition as Exhibit ‘A’. Bourg testified that right after the purchase he ‘walked’ or inspected the property within a month’s time (TRB-99); and that he has been on it every year, and has not missed a year viewing the property. He testified that when he made his inspection in 1934, he began walking at Jean Marie Parfait’s place, and walked back and forth across the property and found that it was ‘growed up into weeds’. He says he has known Howard Parfait all his life; and that Parfait ‘began to possess a portion of this property’ 4 years or more after the purchase by Bourg (TRB-100). Parfait lived about a year aboard his houseboat on the water. ‘And the old camp boat was leaking so bad when we would pass in the bayou we would have to slow down, dead slow, not to throw water in the boat, because it would sink. From then that is where he got on the bank.’ (TR-B-100).
The witness testified that when Jordan bought his property, Harry Bourg let Jordan ‘trap on the back part of the property plus the property Mr. Jordan owned’ (TRB-100). He stated that after Parfait ‘built this camp boat on this particular piece of property then he started building little fences around to put one or two head of cattle in there, because he had a milk cow in there and chickens. Then later on he built another piece of fence to make a garden.’ ‘And then later on after-wards, several years afterwards, then he built to Mr. Jordan’s fence on the west side of the road.’ (TR-B-101). Jordan was living near the property in question when Parfait moved on to it (TR-B-102). When Jordan moved away he sold his property to Hughes Breaux, a brother-in-law of Bourg’s.
In response to a question as to whether he knew where Parfait was living before moving on the property in question, the witness answered: T can tell you some of the places that he was living. He lived down at Cedar Grove. Then he lived in front of Mr. A. J. Authement. Then he lived in the back of Hughes Breaux Store’, which was on Bayou Dulac. ‘Then he lived another place which was in front of Jean Marie Parfait, and then he lived below Lawrence Voisin further down, and the last place he moved into is where he’s at now.’
Howard Fanguy testified that he is 55 years old, that he has known Howard Parfait all his life, and is familiar with the property involved in this suit. He recalls that in 1936, accompanied by his fiancee *413 and his prospective mother-in-law, he attended a party aboard Howard Parfait’s houseboat, which was then in front of the property of Jean Marie Parfait, that he and his wife married in New Orleans on January 27, 1937, where they resided about 3 months, that they then returned to Terre-bonne and at that time ‘Mr. Howard Parfait was still living in front of Mr. Jean Marie Parfait’s’ (TR-B-10S), which adjoins the property involved in this suit.
His testimony is that after Howard Parfait took possession of the property in question, ‘lived on the edge of the bayou in front of the property for maybe 10 or 15 years’ before building a fence across the road; the witness asserts that he used to pass the property on a dirt road before it was blacktopped.
Ernest Parfait (TR-B-107) testified that he was born in 1900 and is 65 years old, and is a brother of Howard Parfait. He stated he attended the party about which Howard Fanguy testified; and that the party was held on the houseboat in the water near Jean Marie Parfait’s property (TR-B-108). He stated that Howard Parfait moved the houseboat ashore after Howard Fanguy was married.”
An individual invoking a plea of thirty years acquisitive prescription has the burden of establishing all of the requisites necessary. The requisites necessary for establishing a thirty year prescriptive title are as follows, to-wit:
LSA-C.C. Art. 3499:
The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.
LSA-C.C. Art. 3500:
The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.
LSA-C.C. Art. 3503:
How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.
LSA-C.C. Art. 3436:
To be able to acquire possession of property, two distinct things are requisite:
1. The intention of possessing as owner.
2. The corporeal possession of the thing.
In order to be successful with a plea of thirty years acquisitive prescription, the intention of possessing as owner must be proved, Clemens v. Meyer, 44 La.Ann. 390, 10 So. 797 (1892), and there must be a positive intention to take and commence possession as owner, Buckley v. Dumond, 156 So. 784 (La.App. 1st Cir., 1934).
In Lamoille County Savings & Trust Company v. A. Moresi Co., 195 So. 787 (La. App. 1st Cir., 1940), we held that testimony relating generally to time that a party has cultivated the land or to the fact of cultivation is not the kind of testimony to support prescriptive possession. More than merely general references to time are required. And in Brown v. Glass, 3 La. App. 38 (1925) it was held that where the evidence clearly shows that the person claiming such possession does not know exactly when this possession began, the Court can not assume that this possession began more than 30 years before prescription was interrupted by litigation.
We are in complete agreement with the Trial Judge when he held that the witnesses of the defendant were “vague, vacillating and indefinite as to time.” Several of the defense witnesses disclosed that Howard Parfait had been on the *414 property far short of the time required for a thirty year prescriptive title. We feel, therefore, as did the Trial Judge, that the defendant has failed to carry the burden of proof as to the plea of thirty years acquisitive prescription.
For the foregoing reasons, the judgment of the Trial Court is therefore affirmed. All costs are to be paid by the Appellant.
Judgment affirmed.