308 So.2d 337 (1975)
Mrs. Marjorie Louviere THOMAS et al.
v.
CONGREGATION OF ST. SAUVEUR ROMAN CATHOLIC CHURCH et al.
No. 10109.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
Stanwood R. Duval, Jr., Houma, for appellants.
Otto B. Schoenfeld and Thomas A. Rayer, New Orleans, for appellees.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. pro tem.
BAILES, Judge Pro Tem.
This is a petitory action instituted by Mrs. Marjorie Louviere Thomas, Farrell Louviere, Carolyn Louvier Sobert, and *338 Mrs. Esther Louviere Matherne, the heirs of the late Louis Louviere who died in 1964. Involved is the ownership of all or a portion of a tract of land in Lafourche Parish, measuring according to an ancient description two arpents in width by fifty in depth.
In September, 1966, the Congregation of St. Sauveur Roman Catholic Church, the defendant herein, instituted a petitory action against Mrs. Louis Louviere, under docket number 20,527 in the Seventeenth Judicial District Court. The plaintiffs herein were not made defendants in that litigation. Upon trial in that matter, the late District Judge Leonard Greenburg rendered judgment in behalf of the church, decreeing the latter to be the owner of the entirety of the disputed property. No appeal was taken from that judgment. Subsequently, a lease on a portion of the property was executed between the church, as lessor, and Mrs. Louis Louviere, as lessee, and two of the present plaintiffs, Mrs. Marjorie Louviere Thomas and Mrs. Esther Louviere Matherne, appeared thereon as witnesses to their mother's mark.
The plaintiffs herein instituted this petitory action on October 8, 1971, setting up their claim to ownership of an undivided one-half interest in the property as heirs of the late Louis Louviere, and also alleging the nullity of the former proceeding for failure to join them therein as indispensable parties. By amended and supplemental petition, the plaintiffs joined their mother as defendant, so all potential claimants to the subject property are now before the court. After trial, judgment was rendered in favor of the defendant-church and against the plaintiffs and Mrs. Louviere. The devolutive appeal followed.
The record owner of the subject property is the Congregation of St. Sauveur Roman Catholic Church, the latter having acquired title by a conveyance from Reverend Eugene A. Vigroux, dated April 24, 1912. Plaintiffs do not set up any title by instrument translative of ownership, but rest their claim solely on the acquisitive prescription of thirty years provided for by LSA-C.C. Article 3499 et seq.
It is undisputed that Louis Louviere and his wife physically possessed at least a portion of the property in litigation for a period of time far in excess of thirty years. In fact, it appears that the parents of Mrs. Louis Louviere were physically on some portion of the property before Mr. and Mrs. Louis Louviere moved thereon to be with her parents. The record does not establish with precision the exact year the Louvieres moved onto the property, but according to testimony of Mrs. Louviere it may fairly be assumed that she and her husband joined her parents on the land in question around the year of 1915.
When Mr. and Mrs. Louviere moved onto the property, there was an old chapel building thereon, apparently in a dilapidated state, and the Louvieres built a small house nearby. Mrs. Louviere testified they moved onto the property to "stay with my mother and daddy." The record is unclear how long Mrs. Louviere's parents lived, and whether they remained on the property until their demise. However, sometime in the mid-1930s, another residence was constructed for the Louvieres on the site of Mrs. Louviere's parents' old home, which residence is still occupied by Mrs. Louviere.
A new chapel building was constructed on the site of the old chapel mentioned above in about 1934. Subsequently, this building was destroyed by Hurricane Betsy, and a third chapel was constructed on the same site in the mid-1960s (after the death of Mr. Louviere). During the course of construction of this third chapel building, it was proposed to extend sewerage field drain lines into an area enclosed by a fence around the house in which Mrs. Louviere resided, and objection was registered toward this proposed action by Mrs. Louviere.
The legal issue herein is whether plaintiffs' ancestor, Louis Louviere, exercised the sort of possession sufficient to give *339 him a thirty-year prescriptive title to all or a portion of the land in question.
Both plaintiffs and defendant readily concede in brief that the prime factual issue is whether Louis Louviere possessed any portion of the subject property as owner, or whether his possession was merely at the sufferance of the church. Only if this issue is first resolved in favor of the plaintiffs need we consider the extent of the property possessed, or the alleged nullity of the judgment of the first law suit.
The pertinent legal principles are quite simple; merely their application to the facts presents difficulty. The proper resolution of this dispute lies in the determination of whether Louis Louviere possessed all or a portion of the subject property publicly and unequivocally, "and under the title of owner." See LSA-C.C. Article 3500. Other applicable articles of our Civil Code are:
LSA-C.C. Article 3441: Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another.
LSA-C.C. Article 3446: Even if a person who commenced his possession of an estate for another, should entertain the intention of no longer holding for that other, but for himself, yet shall he still be presumed to hold possession for the person for whom he originally took it.
LSA-C.C. Article 3487: ... a clandestine possession would give no right to prescribe; ...
LSA-C.C. Article 3490: The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possession by their consent, they possess for him.
LSA-C.C. Article 3510: Those who possess for others and not in their own name, can not prescribe, whatever may be the time of their possession.
Thus, farmers, tenants, depositaries, usufructuaries and all those generally who hold by a precarious tenure and in the name of the owner, can not prescribe on the thing thus held.
LSA-C.C. Article 3511: The heirs of the persons holding under the tenures mentioned in the preceding article, can not prescribe any more than those from whom they hold such thing.
LSA-C.C. Article 3556(25): Precarious. That possession is called precarious, which one enjoys by the leave of another, and during his pleasure.
The respective positions of the parties may be simply stated. Plaintiffs contend that their ancestor possessed with clear intent to own the subject property, and defendant contends that the possession of Louis Louviere was at its sufferance and in return for services by Mr. and Mrs. Louviere as sextons at the mission chapel located on the property.
Everyone concedes that Louis Louviere lived on the property for an exceedingly long period of time, that he built, or at least maintained from time to time, certain boundary and cross-fences on a portion of the property, that he kept and raised livestock on some of the property, that he planted gardens on the property, that he built some structures on the property, and, at the very least, that he performed some maintenance on structures on the property. It is also clear that Mr. and Mrs. Louviere, for a long period of time, performed many services in and around the various chapels which have been located on the property.
*340 The parties, however, place different interpretations upon the foregoing facts. Plaintiffs argue that the activities of Louis Louviere were open and corporeal acts evidencing claims of ownership, and that the religious work performed was done voluntarily and not out of a sense of responsibility for the church's continued sufferance of their ancestor's possession of the church property. The defendant church contends that the activities of Louviere upon the land are equally consistent with his possession as its sufferance in return for services as sexton.
The evidence is, in many respects incomplete, vague and contradictory, and it would serve little purpose to review the testimony of each witness.
It is the burden of the plaintiffs herein to prove their case, and, as was stated in the case of Humble v. Dewey, 215 So.2d 378, 381 (La.App. 3rd Cir. 1968):
"In order for a possessor to successfully claim the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was a positive intention to take and commence possession of the property as owner. (Citations omitted) * * *."
Similar statements have been made by this Court, in Phillips v. West, 144 So.2d 173 (La.App. First Cir. 1962) and in Harry Bourg Corporation v. Parfait, 199 So.2d 405 (La.App. 1st Cir. 1967).
In addition to proving the intention of possessing as owner, the law requires a great deal of specificity in regard to the actual time at which the positive intention to hold the property as owner is made known by the adverse possessor. See Lamoille County Sav. Bank & Trust Co. v. A. Moresi Co., Ltd., 195 So. 787 (La.App. 1st Cir. 1940).
From our review of the record, we are unable to identify any exact point in time prior to the construction of the third chapel on the property in the 1960s when it can clearly be demonstrated that anyone made publicly known claims of ownership by the Louvieres. The present plaintiffs make no claims of acts of ownership by Mrs. Louviere's parents, who were on the property and continued to remain thereon for some years after the Louvieres moved there. All of the activities of Mr. and Mrs. Louviere on the property are at least equally consistent with the special relationship of sexton and being allowed use of the property as compensation, as with the plaintiffs' contention that these activities evidenced claims of ownership to the community.
The witnesses presented by the plaintiffs stopped short of stating that either Mr. or Mrs. Louviere had ever publicly claimed ownership, with the single exception of Ellis Breaux, and it seems clear that ownership of the land was not discussed within the family circle until the episode during construction of the third chapel. Between the years of 1936 and 1957, a considerable number of mineral leases and related documents were executed by the Church, and in 1938 certain survey work was performed on the property in conjunction with one of the mineral leases. There is no record of objection by Mr. Louviere or anyone else to any of this activity.
Also, while we take cognizance of plaintiffs' argument that if prescriptive title had accrued in Louviere the only manner of divesting him of the same would be by deed executed by him or by someone else acquiring title by prescription, we view two aspects of the record as indicators of Mr. Louviere's own view of his status on the property. First, from the testimony of Father Paul Richard it appears that the church sold timber from a portion of the property in 1958, that some of the timber was actually cut with Louviere's knowledge, that the timber buyer knocked down *341 some of the fences on the property, and that Louviere neither objected to the sale of the timber nor to the destruction of the fences. If Mr. Louviere had viewed himself as owner of the property, he very logically would have registered objection. His acquiescence in these activities on the property strongly indicates to us that he viewed his status somewhat different from that of owner.
Although declaration against interest ascribed to a deceased person should be scrutinized with great care (See: Abunza v. Olivier, 230 La. 445, 88 So.2d 815 (1956)) we find the following testimony of the Rev. Paul Richard does have probative value.
Q. "During this period of 1954 to 1960, in what capacity were you acquainted with the property?
A. "I was the Assistant Pastor of Holy Savior in Lockport, and also ex-officio the Missionary to the Mission of Gheens la Vacherie, because Monsignor at that time was 83 years old, and he couldn't make the trip, so I said Mass every Sunday and at least once or twice during the week I was at the chapel.
Q. "During the course of your duties there in Vacherie, did you come to know Mr. and Mrs. Louis Louviere?
A. "Oh, yes.
Q. "Insofar as your acquaintance with Mr. Louis Louviere, was he alive at that time?
A. "Oh, yes, he was, during my whole tenure there.
Q. "Did you ever have any discussions with him concerning his status on the property or relationship with the church?
A. "Quite often. Quite often. I am thinking primarily of the fact that I was there during the tenure of three pastors of Holy Savior. And after each pastor would arrive, she (sic) would ask me the same question. For example, when Monsignor Perino died I was appointed the administrator for nine months, and he asked me, he says, `Father, can my wife and I stay in this house, can we stay on the property?' I said, `Yes, you can.'"
If the Louvieres had been holding themselves out to the public as owners of the property, as is now contended by the heirs of Mr. Louviere, there would have been little reason for the expressed fear of eviction from the property.
For the foregoing reasons, we find that Mr. Louis Louviere did not possess the subject property "as owner" and therefore there is no basis for the plaintiffs' claim of a thirty year prescriptive title to the property.
Accordingly, the trial court's judgment decreeing the defendant, Congregation of St. Sauveur Roman Catholic Church, the owner of
"A certain lot or parcel of ground, situated in the Parish of Lafourche, in the Vacherie Dugue Livaudais, at about twenty-five miles below the town of Thibodaux, and five miles from Bayou Lafourche, said lot or parcel of land measuring two arpents in width by fifty in depth being bounded in front or towards Bayou Lafourche, by lands now or formerly belonging to Edouard Reggio, and below by lands now or formerly belonging to Edouard Reggio, and in the rear by lands now or formerly belonging to Edward Reggios, together with all the buildings and improvements thereon, with the exception of the cypress trees thereon which the vendor reserves, together with the privilege of removing same whenever he does so desire, and the right of way to enter said land for that purpose, at any time he desires to exercise the right herein reserved."
is affirmed at appellants' cost.
Affirmed.