368 So.2d 774 (1979)
Johnnie JONES, Plaintiff-Appellant,
v.
John C. SKANNAL, Defendant-Appellee.
Richard JONES et al., Plaintiffs-Appellants,
v.
John C. SKANNAL et al., Defendants-Appellees.
Nos. 13783, 13784.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1979.
Rehearings Denied March 28, 1979.
*775 DeLaune & Blondeau by A. L. Blondeau, Bossier City, for plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by Don Weir, Jr., Shreveport, for defendant-appellee, Succession of Tom Jones Moffett.
Glen F. Armstrong, Bossier City, for defendants-appellees, John C. Skannal et al.
James E. Franklin, Jr., Shreveport, for defendant-appellee, Enviro South, Ltd.
*776 Sam V. Prunty, Jr., Shreveport, for Isaac & Rosie Lee Jones Howard, plaintiffs-appellees.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearings Denied March 28, 1979.
BOLIN, Judge.
These two possessory actions, involving adjacent tracts in the Sligo area of Bossier Parish, were consolidated for trial. The trial court found that plaintiffs failed to prove they possessed the property as owners and rejected their demands. Plaintiffs appeal and we affirm.
Tract number one, the subject of suit number 13,784, was originally entered in 1907 by Sam Jones, the father or grandfather of the various plaintiffs. He and his family gradually cleared the lands and began to grow crops. In 1909 this original 40 acres was sold by Jones to G. W. Smith, although the Jones family continued to live there and farm the property. Gradually the family expanded its farming operations to include the entire tract in question and enclosed the area with fences. The Jones family has continuously inhabited this tract until the present time.
Tract number two, the subject of suit number 13,783, was entered around 1934 by Johnnie Jones, a grandson of Sam Jones. With the help of the rest of the family he built a house and began clearing the land. He fenced the tract and began his own farming operations which were conducted separately and independently from those of the rest of the family on tract one. With the exception of time he spent in the armed services during World War II, he has continually inhabited this tract until the present time.
In 1976 the record owners of the two tracts sold the property to defendant John C. Skannal, who in turn sold a portion of tract one to defendant Enviro South, Ltd. The recordation of these conveyances prompted the Jones family to file these two suits seeking to be maintained in possession of the property.
The trial court found that plaintiffs had possessed the property in question as lessees or caretakers rather than owners and consequently were not entitled to judgment maintaining their possession. The court found that after Sam Jones died, one of his sons, Kentchen Jones, became the "leader" of the Jones family and in that capacity entered into a lease agreement with the record owners on behalf of the family. The court noted that as to tract number two, the question was somewhat different since Johnnie Jones may have conducted his operations independently of Kentchen and the rest of the family and had made no payments to anyone. However, the court held that in order for Johnnie Jones to be possessor as owner he would have had to somehow manifest his intent to possess as owner to the general public and the record owner, since his possession had begun precariously in the capacity of lessee.
Plaintiffs appeal, alleging the trial court erred in the following respects:
(1) In finding that Kentchen Jones was the "leader" of the Jones family and that his actions were binding on the remainder of the family, his co-possessors;
(2) In admitting into evidence a written lease agreement executed by Kentchen Jones in 1936 on tract number two;
(3) In finding that payments made by Kentchen Jones to the record owners were rental payments rather than payments on an outstanding indebtedness;
(4) In holding that Johnnie Jones was required to give some further notice to the record owner, in addition to that provided by his physical possession of and activities on the property, in order to be held as possessing as owner.
The first allegation of error is without merit. The trial judge in his reasons for decision documented in detail the evidence he relied on in reaching the conclusion that Kentchen Jones represented the entire family living on the property in question. Every witness who testified regarding dealings he had with the Jones' farming operations stated he had dealt exclusively with Kentchen Jones. We cannot say the trial court's decision, based on the cited evidence, was clearly wrong.
*777 The second allegation of error is also without merit. The plaintiffs' objection to the introduction of the lease into evidence was based on their contention that the lease did not cover any of the property involved in these suits and consequently was irrelevant. Although the description in the lease may be somewhat ambiguous due to its reference to the Sligo Road, it refers to the forty acres included in tract number two by specific description. However, even if consideration of the lease was improper, it was harmless error since the other evidence was more than sufficient to justify a finding that Kentchen Jones made lease arrangements with the record owners regarding both tracts on behalf of members of his family living on both tracts.
Plaintiffs' third allegation of error is based on their contention that the 1909 deed from Sam Jones to G. W. Smith was not intended as a transfer of the property but was instead intended as a mortgage to secure a debt the family owed Smith. They claim that all payments made by Kentchen Jones to the record owners were not rental payments but rather payments on this indebtedness. The property was never reconveyed to the Joneses although they claim the debt was paid. Furthermore, Kentchen Jones made payments to record owners of the property other than the Smith family and specifically referred to these payments as rent. Under these circumstances we agree with the trial court that this contention was not proved.
Plaintiffs' final allegation of error is likewise without merit. It is true that generally the mere fact of physical possession by a non-owner is sufficient notice to the record owner and the public at large that the non-owner intends to possess the property for himself. Civil Code Article 3488. However, if it is shown that the possession began in some capacity other than owner, the mere fact of physical possession does not put the public and record owner on notice. In such a case the possessor must do something to make generally known his positive intention to hold the property as owner, and proof of this change in intent must be specific in regard to the actual time it occurred. Thomas v. Congregation of St. Sauveur Roman Catholic Church, 308 So.2d 337 (La.App. 1st Cir. 1975).
In the present case Johnnie Jones began his possession as lessee by exercising the right to occupy the land that his father, Kentchen Jones, secured on his behalf from the record owners of the tract. The evidence indicates that Kentchen Jones secured this right not only for himself but for his entire family and there is nothing about Johnnie Jones' possession and activities relating to tract two that would distinguish it from that of the rest of the family on tract one. There was never any specific action taken by Johnnie Jones to make known his intent to possess as owner. Consequently his possession continued in the capacity of lessee despite his failure to pay any rent.
The judgment in these consolidated cases is affirmed at appellants' cost.