396 So.2d 380 (1981)
Sam LEVATINO
v.
Realus J. WILLIAMS, Jr.
No. 13590.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Duncan S. Kemp, III, Hammond, counsel for plaintiff.
Leonard E. Yokum, Jr., Hammond, counsel for defendant.
Before COVINGTON, CHIASSON and LEAR, JJ.
LEAR, Judge.
This is a petitory action arising out of a dispute over title to a tract of land containing 0.424 of an acre, situated in Tangipahoa Parish, Louisiana, described as follows:
"That certain tract of land described as Tract 2 as per that certain survey of Wallace L. Adams, Registered Land Surveyor and Civil Engineer dated July 23, 1979 containing .424 acres. Said Tract 2 being described as follows:
"Beginning at a point 754.40 feet South 02 deg. 45 min. 00 sec. West of the NE corner of Section 36, T 4 S, R 6 E; thence North 88 deg. 33 min. 58 Sec. East 244.00 feet; thence South 38 deg. 05 min. 44 sec. East 85.56 feet; thence South 88 deg. 51 min. 01 sec. West 300.00 feet; thence North 02 deg. 45 min. 00 sec. East 67.32 feet to point of beginning."
The present action was brought in response to the judgment in a possessory action previously brought by Realus J. Williams, Jr. against Sam Levatino. The record reflects that record title to the property in question is vested in Sam Levatino, the chain of title having been introduced in the record of these proceedings. The defendant has no record title, and must claim title through thirty years acquisitive prescription.
*381 The burden of proof to establish the facts essential to support a plea of thirty years acquisitive prescription rests on the party who makes the plea. Hoffman v. McKneely, 352 So.2d 260 (La.App. 2 Cir. 1977); Harry Bourg Corporation v. Parfait, 199 So.2d 405 (La.App. 1 Cir. 1967); LaCaze v. Boycher, 80 So.2d 583 (La.App. 1 Cir. 1955).
In order for a possessor to claim successfully the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish that there has been corporeal possession of the property for the required period of time as well as a positive intention to take and commence possession of the property as owner. Leblanc v. Laborde, 368 So.2d 1126 (La.App. 3 Cir. 1979), writ denied, 369 So.2d 1377 (La.1979); Humble v. Dewey, 215 So.2d 378 (La.App. 3 Cir. 1968). The jurisprudence of this state has determined that a party claiming such possession must evidence his possession by enclosures. Schneider v. Delaughter, 362 So.2d 585 (La. App. 1 Cir. 1978).
In the possessory action, Mr. Williams had sought to be declared in possession of the strip of land now in dispute as well as a larger tract of land. In that action, Levatino prevailed insofar as the majority of the property which was the subject of the possessory action was concerned, with the trial court finding that Williams was in possession of the disputed strip of land described above.
Mr. Levatino purchased fifteen acres of land from James Young Ware, by deed dated June 1, 1926, comprising a five acre tract and a ten acre tract which are contiguous, but with the five acre tract lying in Range 6 and the ten acre tract lying in Range 7. Because of the dimensions of the sections in which the respective properties were located, the properties were offset rather than in line.
After the purchase of the property, Levatino cultivated a portion of the five acre tract, which caused him to construct a fence in 1926 along the common boundary between the five (5) acre tract owned by him and the property owned by the father of the defendant herein. The location of this fence is not in dispute. The said fence was constructed by Levatino along the south boundary of the five acre tract, and upon reaching the range line, or eastern boundary of the said tract, turned north along the range line, then turned at right angles to the west, and eventually enclosed the entire five acre tract. Neither at the time Levatino purchased the property, nor when he constructed the fence, was a survey made of the respective properties. Subsequently, Levatino began to cultivate a larger part of his property, including a portion of the ten acre tract lying to the rear of the five acre tract. Again, without the benefit of a survey, Levatino constructed a fence for the primary purpose of protecting that portion of his property which was under cultivation from cattle which roamed in the area. This fence was merely an extension of the first fence built by Levatino to enclose the five acre tract, and was intended to enclose a small portion of the ten acre tract which Levatino was then taking into cultivation. From the time of the construction of the second fence until 1958, there were apparently no controversies between the parties over the fence or the land. During this period of time, according to Mr. Williams, his father operated a dairy and apparently allowed his cattle to roam at large in the area, which area consisted of the back portion of the Levatino property, all of the property owned by Mr. Williams, Sr. and some property owned by a timber company to the east.
In 1958, the original fence constructed by Levatino had fallen into a state of disrepair, so Levatino requested Mr. Williams to assist him in repairing the fence. Mr. Williams declined to do so. Levatino then backed up a few feet to the north of the original fence that he had constructed, and built a new fence (again enclosing the cultivated portion of his property). After the construction of the new fence, Levatino advised Mr. Williams that he was giving him thirty days to erect his own fence. According to Levatino's testimony, Mr. Williams simply tore *382 down the remnants of the old fence, and then constructed a fence that paralleled the Levatino fence for a short distance, approximately 300 feet, and then turned back to the south around the cultivated portion of Mr. Williams' property.[1] According to the record, this 1958 fence was the first fence constructed by Williams.
In 1966, Levatino extended his fence in an easterly direction to the rear of his property because of a cattle operation that he and his sons had commenced.
In 1970, the defendant herein, beginning at the eastern-most extent of the fence built by his father, constructed a "temporary fence" that was designed "only to keep cattle in." It was the testimony of Mr. Williams that this temporary fence simply ran from tree to tree and was not intended to delineate the boundaries between the two properties. Also in 1970, Mr. Williams, together with his two brothers, employed O.C. Hollister to survey and divide the property lying south of Levatino, which they had inherited from their father. By partition the defendant herein obtained that portion of the Williams property lying immediately adjacent to Levatino's property. In October of 1973, Levatino had his property surveyed by Wallace Adams, a Registered Land Surveyor, which survey indicated that the boundary between the Williams property and the Levatino property, with respect to the ten acre tract of Mr. Levatino, was actually to the south of the original fence constructed by Mr. Levatino in 1958, and the fence constructed by Mr. Williams, Sr. in 1958. On the basis of this survey, Mr. Levatino attempted to construct a fence along the surveyed boundary; and the possessory action ensued.
The results of the possessory action left Realus Williams, Jr., the defendant herein, in possession of that small portion of property designated as tract 2 of the Adams survey, and left Sam Levatino in possession of that portion of property designated as tract 1 on the Adams survey. In response to the judgment in the possession action, Levatino filed this petitory action, which resulted in a judgment in favor of the defendant, Realus J. Williams, Jr. In the judgment, the trial judge was of the opinion that the defendant acquired tract 2 (0.424 acres) by acquisitive prescription, but decreed that Levatino owned the "parent" 10.232 acre tract less and except said 0.424 acres. Mr. Levatino appealed devolutively.
Our conclusion is that the evidence fails to show that the defendant maintained an enclosure, such as a fence, around the disputed property or exercised open, physical possession as owner thereof for a continuous and uninterrupted period of thirty years.[2] The evidence establishes that there has been no visible boundary or actual uninterrupted possession by the defendant or his ancestors in title for thirty years, or more, of the land extending beyond that described in the Williams' title, and embraced within the visible bounds. The requirements of LSA-C.C. art. 852 (now article 794) are not met.[3]
It is apparent from the record that Levatino chose to enclose only that portion of his land which was cultivated. The only fence *383 erected for that purpose from 1926 to 1958 was constructed by Levatino. Williams erected no fence until 1958, which is an insufficient time for acquisitive prescription to apply.
For the above reasons, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff and against the defendant, decreeing plaintiff, Sam Levatino, to be owner of the following described property, which property includes tract 2 described above and which is more fully described as follows:
"A certain piece or parcel of land located in the Parish of Tangipahoa, State of Louisiana, described as 10.232 acres located in the NW/4 of Section 31, T 4 S, R 7 E, described as follows:
"Begin at a point 410.21 feet South 02 deg. 45 min. West of the NE corner of Section 36, T 4 S, R 6 E; thence North 88 deg. 51 min. 01 sec. East 1075.74 feet; thence South 00 deg. 00 min. 02 sec. West 410.64 feet; thence South 88 deg. 51 min. 01 sec. West 1095.48 feet to the range line dividing R 6 E and R 7 E; thence North 02 deg. 45 min. East 411.51 feet to point of beginning."
REVERSED AND RENDERED.
NOTES
[1] The two fences erected by the landowners were wide enough apart for a lane between them.
[2] Art. 3499:

The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.
Art. 3500:
The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.
[3] LSA-C.C. Art. 852:

Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.