558 So.2d 242 (1990)
CHEVRON U.S.A. INC.
v.
Edmond J. LANDRY and Melanie Comeaux Landry et al.
No. 89-C-1737.
Supreme Court of Louisiana.
March 12, 1990.
Rehearing Denied April 12, 1990.
Oliver Stockwell, William Shaddock, Bernard McLaughlin, Jr., David Bateman, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, Michael Parks, Parks & Parks, for applicant.
Robert Leake, Baton Rouge, for respondent.
DIXON, Chief Justice.
Chevron U.S.A. Inc. initiated this concursus proceeding under C.C.P. 3654 to determine the party entitled to mineral royalties from a disputed tract of land. Two families, the Chustzes and the Landrys, were named party defendants in this action.[1] *243 Both families claim ownership of the property in dispute. The Landry party responded to the concursus pleadings by filing an answer and reconventional demand, seeking an accounting for all production from the disputed tract, payment of unpaid royalties, damages consisting of double royalties and attorney's fees, and a cancellation of the existing lease. Chevron then filed an exception of prematurity which the trial court denied.
After trial, the court held that the Chustz family had record title to the property and constructive possession. The Landrys' reconventional demand was dismissed, citing the failure on their part to carry the burden of proof required to maintain a claim of thirty year acquisitive prescription. On appeal, the court reversed and remanded the proceeding to the trial court for a determination of appropriate damages against Chevron, arising from the reconventional demand, 546 So.2d 858 (La. App.1989). Chevron and the Chustzes applied to this court for review.
The property in dispute consists of an island formed by the Bayou Boidore. Just north of the island, the bayou splits into an east and west branch. To the east of the east branch is the Chustzes' undisputed property. To the west of the west branch is the Landrys' undisputed property. The island between the two branches is the property in dispute. The water surrounding the island is stagnant except in periods of heavy rainfall, but serves as a natural barrier. Direct access to the island is obtained by two earthen dikes leading from the Landrys' property onto the island. These dikes allow movement of livestock and farm equipment onto the island.
The only other access to the island was by jumping down from a railroad trestle onto the southern tip of the island. The trestle was removed around 1950. For years only the crossing on the lower western side of the island was passable year round, as the other crossing flooded intermittently; however, the Landrys improved the crossing leading to the northwest edge of the island so that it is now used almost exclusively. There is no access from the Chustz property, nor did the Chustz property share a boundary with the railroad trestle. To gain access to the island, it was necessary for the Chustzes to use the earthen crossing on the Landry property.[2]
The Landry title derives from a cash purchase by Edmond Landry, Sr. from Prudential Insurance Company of America dated December 27, 1940. It is undisputed that this title includes a narrow strip of the land along the western edge of the island.
The Chustzes trace their title to an act of sale dated February 15, 1881 from William G. Vincent to Ernest G. Beuker. There is no other evidence of the Chustzes' title in the record. The trial court correctly concluded that the island, other than the strip contained in the Landry title, was included in the Chustz title.
The first question before this court is whether the acts of possession by the Landrys over the disputed property were sufficient to maintain a possessory action.
The burden of proof in a concursus proceeding is governed by C.C.P. 3654, which provides that the court will render judgment in favor of the party which would be entitled to the possession of the immovable property in a possessory action, unless the adverse party proves that he acquired ownership from a previous owner or by acquisitive prescription. The initial burden of proof falls upon the Landrys. The corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription of thirty years. Norton v. Addie, 337 So.2d 432 (La.1976); Liner v. Louisiana Land & Exploration Co., 319 So.2d 766 (La.1975); Hill v. Richey, 59 So.2d 434 (La.1952). The possession must be open, continuous, uninterrupted, *244 peaceable, public and unequivocal. C.C. 3476.
What constitutes possession depends primarily on the nature of the property. "The quality of possession required in a particular case depends not only on its classification as good or bad faith possession, but also on the type of land in dispute. Liner v. Louisiana Land & Exploration Co., supra at 772. The acts of possession required in the case of farm land must be of a greater quality than in the case of woodland; and, a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land. Liner, supra at 772. Further, where an individual claims by corporeal possession alone and without title, he must show an adverse possession within enclosures. Norton v. Addie, supra at 436. "`Enclosed' does not necessarily mean `fenced in.'" City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975, 981 (La. 1982).
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof...." Hill v. Richey, supra at 440.
Clearly the Landrys' have satisfied the requirement of maintaining enclosures. The enclosures in this case were natural, formed by the Bayou Boidore. Evidence at trial established that the only access to the island was by two earthen dikes on the Landry property and that these dikes were maintained solely by the Landrys.
The Landrys also proved corporeal possession of the island. Mr. Landry, Sr. purchased Lot 1 of the Oakland Plantation in 1940. The island was covered by briars, bushes, small trees and other undergrowth at the time of Landry's purchase. Landry began farming in 1941 and began clearing the island of all undergrowth by dragging an iron rail behind his mules and wagon. Landry's clearing of the island, thereby converting it to pasture land, was a conclusive and overt act of possession sufficient to establish corporeal possession in a possessory action. The Landrys also demonstrated that they exercised exclusive grazing rights to the island. This court held that the exercise of exclusive grazing privileges over the land, accompanied by the maintenance of enclosures constitutes corporeal possession. Norton v. Addie, supra at 436. Although it is asserted that other cattle grazed on the island during the years of open ranges, nowhere in the record is there any evidence to support this assertion. No witness could establish that any livestock, other than that belonging to the Landrys, ever grazed on the island. The Landrys, on the other hand, used this island to graze cattle and mules upon occupying the property in 1941.
The conversion of the island and its use as pasture land constitutes corporeal possession. Corporeal possession alone, however, is not sufficient to maintain a possessory action. To acquire possession, one must take corporeal possession of the thing and intend to possess as owner. C.C. 3424. The trial court erroneously attached significance to the fact that Edmond Landry, Sr. failed to testify. They felt that only his testimony could have conclusively substantiated the requisite intent as owner. One is presumed to intend to possess as owner unless he began to possess in the name and for another. C.C. 3427. The mere fact of physical possession by a non-owner is sufficient notice to the record owner and the public at large that a non-owner intends to possess the property for himself, as owner. Jones v. Skannal, 368 So.2d 774, 777 (La.App. 2d Cir.1979), writ denied, 371 So.2d 620 (La.1979). There was no evidence produced at trial to indicate that the Landrys possessed the island in the name or for another, nor was any evidence produced to rebut the presumption of Landrys' intent to possess as owners. Through their clear and unequivocal acts of *245 possession, the Landrys are presumed to possess as owners, thus maintaining the possessory action.
There remains before the court, however, the Landrys' claim to ownership of the island by virtue of thirty years acquisitive prescription. Their claim is based on the following Civil Code articles:
"Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." C.C. 3486.
"For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed." C.C. 3487.
As previously mentioned, the corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription. C.C. 3476. The Landrys have already sustained a possessory action. The question remaining is whether they maintained such possession over a period of thirty years. The testimony and evidence presented confirms that they did. The most convincing and conclusive act of possession by the Landrys was their clearing of the land, thereby converting it to pasture land. The record reflects the Landrys continued maintenance of the island for this purpose for over thirty years. When asked what activities he observed the Landrys perform on the island between 1950 and 1982, Herman Cline, a neighbor of the Landrys and Chustzes, responded that the Landrys raised cattle on it and cleared underbrush, except for one year when they attempted to grow corn. Clarence Landry stated that from his earliest recollections in 1944 or 1945, he could remember his father maintaining the island by clearing weeds. Delton Landry testified that since 1965 he has maintained the island by clearing undergrowth, small trees and briars. Edmond Landry, Jr. stated that as kids they cleared out beneath the trees in the 1940s. Further, Edmond stated that the island is cleared of underbrush on a continuous basis. Testimony from neighbors Herman Cline, Thomas Bello and Joseph Dugas, and from family members Edmond, Jr., Delton and Clarence Landry, established that the Landry family has used the island as pasture land every year since 1941, except for one year in the 1950s, when Edmond, Sr. planted corn on the island. The Landrys' intent to use the island as pasture is supported by testimony indicating that the Landrys planted winter grass to enable grazing on the island year round. Photographs entered into the record corroborate the Landry claim. Furrows are still visible in the field, indicating that the island was cleared and plowed. There are no bushes, briars, small trees or undergrowth on the island which is consistent with the Landry claim that the island was cleared and maintained as pasture land. It is clear from the record and the nature of the property in dispute that the Landrys acquired and maintained corporeal possession of the island for well over thirty years. The Landrys are the present owners of the island through acquisitive prescription.
Since the trial court held in favor of the Chustzes, the merits of the Landrys' reconventional demand against Chevron were never reached; therefore the appellate court decision is affirmed for reasons stated herein, and the matter is remanded to the trial court for determination of the merits of the reconventional demand.
Costs of this portion of the case will be paid from sums deposited by Chevron U.S.A. Inc.
COLE, J., respectfully dissents. I would reinstate the judgment of the trial court.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The majority errs in substituting its factual findings on the issue of possession for that of the trial judge who heard the witnesses and is familiar with property in the Parish of Pointe Coupee.
Contrary to the majority's statement that the Landrys exercised exclusive grazing rights to the island, the trial court cited the testimony of Preston Chustz who said that his father turned his cattle loose in winter *246 and the cattle went onto the island. Herman Joseph Cline, who used to ride and hunt on the property, said that various people let their cattle roam on the island.
The only person who could testify about the Landry family's initial possession of the property was Edmond Landry, Sr. While Mr. Landry is 85 years old and wears a hearing aid, the facts are within his particular knowledge. He appeared alert and attentive in court throughout the trial, and the trial court felt he should have been called to testify.
Contrary to the majority's assertion, the Landrys' acts were far from being clear and unequivocal acts of possession. According to the trial court, the Landry family grazed livestock, planted winter grass on one or two occasions, cleared land under the pecan trees to facilitate gathering pecans, attempted to grow corn on one occasion, cut timber on one occasion and dumped trash on a remote part of the island.
The trial court correctly found that the Landry family had failed to carry its burden of proving continuous, uninterrupted, peaceful, public and unequivocal possession of the property in dispute for 30 years, the requirements for acquisitive possession.
The majority errs in substituting its judgment for that of the trial court. I respectfully dissent.
NOTES
[1] Named as one set of defendants were Eric Chustz, Norris Broussard and Eloise Chustz Broussard, Roy Francis Chustz, Charles Louis Chustz, Henry Norris Chustz and Joseph Preston Chustz and Mary Alice Aucoin Chustz, or collectively, the Chustz claimants.

Named as the second set of defendants were Edmond J. Landry and Melanie Comeaux Landry, James L. Moore and Jean Harry Moore, E. Sanders Alpaugh and Nancy Thompson Alpaugh, or the Landry claimants.
[2] There was one incident in which a Chustz cow gained access to the island without using the earthern crossings; however, testimony established that this was an isolated incident and involved a crazed cow. This one incident does not refute the fact that the only access to the island was from the Landrys' property.